## GLEASON *v.* DISTRICT OF COLUMBIA.

APPEAL FROM THE COURT OF CLAIMS.

No. 216.   Argued April 10, 1888. — Decided April 23, 1888.

G. performed work for the District of Columbia, and received therefor in January, 1874, certificates of indebtedness of the Board of Public Works of the District. He pledged these certificates as collateral for a 60-days note for an amount much less than their face, and made a general transfer of them to the pledgee. Before the maturity of the note

his creditor absconded. He then notified the President and the Treasurer of the Board verbally of the transfer, and verbally protested to the Board against payment of the certificates to the persons who had become holders of them. In June, 1874, the Board was abolished, and a Board of Audit was created to examine and audit for settlement the outstanding certificates of indebtedness issued by it. In October, 1874, G. filed a bill in equity for the purpose, among other things, of restraining the Board of Audit from allowing these certificates to their holders. On demurrer a restraining order, which had been made under this bill, was dissolved. The Board of Audit then allowed the certificates to their holders, and 3.65 bonds of the District were issued for them. G. then commenced this action against the District. *Held*, that he had been guilty of gross negligence in the matter, which prevented him from recovering against the District.

THE case is stated in the opinion of the court.

*Mr. Eppa Hunton* and *Mr. V. B. Edwards* for appellant.

*Mr. F. P. Dewees* for appellee.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from the Court of Claims by the claimant, Andrew Gleason, who brought suit in that court against the District of Columbia, founding his demand upon certain certificates of the Board of Public Works, which were delivered to him, showing an indebtedness due on account of work done for the defendant, the District of Columbia.

It appears that Gleason borrowed money from one Rudolph Blumenburgh, to whom he gave his note for $30,000, due in sixty days, on the 13th of January, 1874, depositing as collateral security the certificates already mentioned, which he indorsed in blank. Before the maturity of that note Blumenburgh absconded. These certificates afterwards turned up, were presented to the Board of Audit for adjudication, and were allowed by it to the full amount expressed on their face, certificates of the Board of Audit being issued for them to the parties presenting them, while the original certificates of the Board of Public Works were cancelled. The holders of these certificates of the Board of Audit afterwards received bonds

of the District of Columbia, called 3.65 bonds, in exchange therefor.

The Court of Claims finds that when Gleason discovered that Blumenburgh had absconded with his certificates of the Board of Public Works he saw Magruder, treasurer of that Board, and notified him that Blumenburgh had these certificates, protested against the payment of them, and also notified Mr. Shepherd, who was president of the Board of Public Works. It is a fair inference from this finding that this notification was given in a conversation, and was not in writing. The opinion of the Court of Claims speaks of it as a verbal notification.

On the 20th of June, 1874, Congress passed an act, 18 Stat. 116, c. 337, abolishing the Board of Public Works and creating a commission to exercise all the power and authority theretofore lawfully vested in the Governor or Board of Public Works of the District, with certain limitations. By the 6th section of that act the First and Second Comptrollers of the Treasury of the United States were constituted a Board of Audit "to examine and audit for settlement," among other things, "the debt purporting to be evidenced and ascertained by certificates of the auditor of the Board of Public Works." In this class of debts were, of course, included the certificates issued to Gleason and by him indorsed to Blumenburgh. The character of this Board and its functions are commented on in the case of *Laughlin* v. *District of Columbia*, 116 U. S. 485.

On the 13th day of October, 1874, four months after the passage of this bill, after the creation of the Board of Audit and after the powers of government in the District of Columbia had been transferred to the Commissioners, Gleason filed his bill in equity in the Supreme Court of the District against the Commissioners, the Board of Audit, the Comptroller of the District of Columbia and the Sinking Fund Commissioners of the District, alleging that he was the owner of the certificates now the subject of controversy. A restraining order was made enjoining the issuing of certificates and Blumenburgh from receiving them, but on the 5th day of November afterwards this restraining order was, at the instance of the

members of the Board of Audit, and on general demurrer, dissolved so far as it affected the members of that Board. There is no finding, nor any evidence in the record, as to what became of that suit, so far as it related to the Commissioners and Comptroller of the District, the Sinking Fund Commissioners, and Blumenburgh.

As the finding shows that 3.65 bonds, negotiable on their face, were issued for the entire amount of the certificates of the Board of Audit, it is clear that if Gleason recovers in this action, the District of Columbia will have to pay twice the amount of his recovery. We think it equally clear, under the facts of the case, that the fault in the matter lies with Mr. Gleason. He placed his original certificates, which were issued by the Board of Public Works, in the hands of Blumenburgh with an unlimited indorsement, when he might have made a statement that they were held as security for the sum which he had borrowed. He knew, as the Court of Claims finds to be the fact, that this class of securities was bought and sold in the open market by the moneyed men of the District of Columbia, and that they were treated and considered as negotiable instruments. Although this court has decided that they were not in the full sense of that term negotiable as commercial paper, yet Gleason must have known that he was placing them in the hands of Blumenburgh in a manner and in a condition which would enable him to perpetrate a fraud, either upon Gleason himself, or upon some other person to whom he might sell them. When he discovered that Blumenburgh had absconded, and that his certificates could not be found, the steps which he took to protect himself, or the District of Columbia, were very inefficient as compared with what he might have taken, since he merely gave a verbal notice of the facts to Shepherd and Magruder, the president and treasurer respectively of the Board of Public Works. He made no representations in writing, giving an accurate and full description of the certificates, as he might have done. He might, also, while the Board of Public Works was an existing body, have brought his suit against them of the same character as the one he afterwards brought against the Com-

missioners and the Board of Audit.  This he did not do, but on the contrary when he finally initiated legal proceedings the parties to whom he had given the notice were no longer officers of the District of Columbia, nor is there any evidence that the statement or warning which he gave to Shepherd and Magruder ever came to the knowledge of the Commissioners, or was brought to the attention of the other proper officers of the District, who might have been bound in a decree in the case.

As to the Board of Audit, it is very clear that the Supreme Court of the District could not rightfully, at the instance of Gleason, enjoin it from proceeding to perform the very duty which was appropriate to that condition of affairs then existing, namely, to audit the claims represented by these certificates, to determine whether the District of Columbia was responsible for them, and if so, to whom it was responsible. The Board of Audit, in accordance with the statute under which it was created, gave public notice that it would hear and examine into all these claims.  Mr. Gleason seems to have contented himself with the very imperfect notice which he had given to the persons representing the District government. He did not appear before the Board of Audit at any time; he does not seem to have inquired whether these certificates were presented before them, or to have made any effort to ascertain whether they would consider them, or when their examination would be undertaken.  He offered no evidence of his interest in or his right to the certificates.  They came before that board, as it is fair to presume, with the indorsements and transfers upon them, so that *prima facie* a case was made out entitling the parties who presented them to receive the certificates of the board for their amount.

In thus standing aloof, and supposing, if he did so suppose, that the Board of Audit would hunt up the evidence of the fact that he had an interest in these certificates and take upon itself the business of presenting a case against the certificates as they came before it, of which claim it knew nothing and had no evidence, and which Gleason himself did not come forward to establish, he was guilty of the grossest negligence,

a negligence which must now. prevent him from recovering against the District of Columbia the amount of those certificates, or any part of them.  Throughout the whole transaction he has shown a want of diligence and care; First, by placing in the possession of Blumenburgh, with an unlimited indorsement, these instruments for which he received an advance of the amount of money agreed upon between them; and, second, by the imperfect notices that he gave when he found that Blumenburgh had absconded with his certificates.  The efforts he then made to protect himself, or the District of Columbia, were wholly inefficient and not such as the case required of him.  Verbal notice in a conversation with the president and treasurer of the Board of Public Works, even if that body had continued in existence, was not such notice as the case demanded.  His entire neglect also to make any appearance before the Board of Audit, or to assert any claim before that body, established especially for the purpose of adjudicating upon such claims as his against the Board of Public Works, and his knowledge of the fact that he had himself placed in the hands of others the means of asserting the claim which he now brings against the District of Columbia, are all evidence of such laches and neglect as in our judgment precludes his right to recover in this action.

The principle on which this case was decided in the Court of Claims was, we think, established by the judgment of this court in *Laughlin* v. *District of Columbia*, already cited.  There the court said.: " The statute authorizing the Board [of Audit] gave notice to Laughlin [who was in a similar condition to Gleason] that he must himself appear before that tribunal to assert his rights as against the holder of his certificates, or take some other steps to prevent their payment, and, if he did not, that his claim against the District might be lost.  The board, even if his letter had been brought to its attention, would not have been compellea to give him any other notice to appear than that which he already had.  As he failed to appear at all there was nothing for the board to do but to act upon the evidence which was before it, and decide accordingly."  pp. 490, 491.

That is precisely what was done in the present case. We think the judgment of the Court of Claims in the matter was correct, and it is accordingly

*Affirmed.*