## COWDREY *v.* VANDENBURGH.

1. Except where the original owner of a non-negotiable demand which he has indorsed in blank is estopped from asserting his original claim thereto, the purchaser thereof from any party other than such owner takes only such rights as the latter has parted with.

2. *Semble,* that if the pledgee of such a demand writes a formal assignment to himself over the blank indorsement made by the pledgor, and in that form sells it to a third party for value, the pledgor is, as against such third party, estopped from asserting ownership thereto.

APPEAL from the Supreme Court of the District of Columbia.

This was a bill in equity, filed by J. W. V. Vandenburgh, H. L. Crawford, and L. S. Filbert, trading as J. W. V. Vandenburgh & Co., against Rudolph Blumenburgh, to compel the surrender of a certain certificate, of which the following is a copy: —

"No. 4441.]      OFFICE OF AUDITOR, BOARD OF PUBLIC WORKS,
                 "WASHINGTON, D. C., Dec. 6, 1873.

"I hereby certify that I have this day audited and allowed the account of J. V. W. Vandenburgh & Co., for work on Columbia Street, amounting to eight thousand four hundred and fifty-one dollars and eighty-eight cents.

"$8,451.88.

"J. C. LAY, *Auditor.*"

N. A. Cowdrey was subsequently made a party. A decree was rendered against him, from which he appealed to this court.

The remaining facts are stated in the opinion of the court.

*Mr. Joseph H. Bradley* for the appellant.

*Mr. James G. Payne, contra.*

MR. JUSTICE FIELD delivered the opinion of the court.

The complainants, composing the firm of Vandenburgh & Co., of the District of Columbia, had, previously to Dec. 6, 1863, entered into contracts with the Board of Public Works of the District for grading, paving, and improving certain streets in the city of Washington. On that day, their account, amounting to $8,451.88, for work on one of the streets, was audited and allowed, and a certificate of the auditor to that effect was issued to them. On the 17th of February following the complainants borrowed of the defendant Blumenburgh the sum of $3,160 for six months, and deposited with him as collateral security the certificate, to be returned upon the payment of the money. The certificate was at this time indorsed by them in blank. When the money became due they called with the amount and accrued interest at the former place of business of Blumenburgh to pay the debt and take up their certificate; but he had disappeared, and no one there knew when he had left or whither he had gone. The complainants could not find him, nor any one representing or acting for him; and, what was of more consequence, they could not find their certificate either. He had clandestinely departed from the city; and they charge in their bill, in substance, that he always intended to cheat and defraud them; and that without their knowledge he has disposed of the certificate to some one, who in conjunction

with him is attempting to wrongfully use it, and thus deprive them of their property.

By the legislation of Congress relating to the District of Columbia, certificates of allowed and audited accounts, like that in question, could be surrendered to a board of audit, and certificates of indebtedness against the District received for them; and these latter certificates could be exchanged for interest-bearing bonds of the District. The complainants, informed that the certificate belonging to them had been presented to the board of audit by agents of Blumenburgh, or of persons to whom it had been passed, for the purpose either of obtaining money therefor or bonds of the District, filed the present bill to arrest the further use of the certificate, and compel its restitution to them. Learning afterwards that the appellant, N. A. Cowdrey, of New York, claimed to be owner of the certificate, and was seeking to obtain for it from the board of audit a certificate of the indebtedness of the District, for which an interest-bearing bond could be issued, they amended their bill, and brought him in as a defendant.

In his answer he admits the possession of the certificate, and avers, in substance, that he purchased it in the ordinary course of business of a broker in Washington for value with other certificates of a similar character, but does not state what amount he paid for it; that he was at the time ignorant of the transaction between complainants and Blumenburgh stated in the bill, and that the certificate had the blank indorsement of the complainants, which justified him in concluding that they had parted with their interest; and he insists that he is therefore entitled to protection as a *bona fide* holder for value without notice. To the answer a replication was filed, and its affirmative allegations are unsupported by any proofs. The answer cannot, therefore, be taken as evidence on his behalf. He must, therefore, be treated as one standing in the place of Blumenburg, and holding the certificate subject to the claim and equities of the original holder. The certificate was not a negotiable instrument which could pass by indorsement and delivery. It was not a promise to pay any sum, nor was it an order upon any one or upon any fund for the payment of money, or for the delivery of any thing of value. It was simply a statement that

the account of the complainants for work done by them upon one of the streets of Washington had been audited and allowed by an officer of the city, whose duty it was to ascertain and certify as to the amount and price of the work done by a contractor. Whoever takes such a certificate, whether with or without notice, takes it subject to all the rights and equities of the actual owner, as much so as if it were tangible property in the streets.

The cases where by law certificates of a similar character are made negotiable can have no application. It is not pretended that any law of Congress has made the certificates of the auditors of the District of Columbia negotiable, or given to them any special character beyond that which they purport on their face to possess. Nor can any weight be given to the suggestion that, by custom, these instruments are considered and treated as negotiable paper in the District. There was no evidence offered of the existence of any such custom, even had such evidence been admissible to contravene an established rule of law.

That the purchasers of non-negotiable demands, like the certificate here, from others than the original owner of them, can take only such rights as he has parted with, except when by his acts he is estopped from asserting his original claim, is established by all the authorities. He must in such case, as Lord Thurlow said, abide by the case of the person from whom he buys. *Cutts* v. *Guild*, 57 N. Y. 229; *Ingraham et al.* v. *Disborough*, 47 id. 421; *Bush* v. *Lathrop*, 22 id. 535.

If the pledgee, Blumenburgh, had written over the blank indorsement of the complainants a formal assignment to himself of the claim, and in that form had sold the certificate to Cowdrey for value, it is possible that the latter might have successfully insisted that the complainants were estopped from asserting, as against him, ownership of the claim. The principle is well settled that when the owner of property in any form clothes another with the apparent title or power of disposition, and third parties are thereby induced to deal with him, they shall be protected. The case of *McNeil* v. *The Tenth National Bank*, in the Court of Appeals of New York, contains a clear statement of the law on this head. There, it is true, a certificate

of stock was pledged with a blank assignment and power of attorney indorsed, which the pledgee afterwards filled up, and then disposed of the stock. It was evident that the owner contemplated that the blanks in the assignment and power should be filled up, if it should ever become necessary. 46 N. Y. 325.

But the principle stated by the court is as applicable where no such intention is manifested. The rights of innocent third parties, as the court there observes, "do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance." Here the complainants could have expressed in their indorsement the purpose of the deposit of the certificate with Blumenburgh, — that it was as security for a specified sum of money, — and thus imparted notice to all subsequent purchasers or assignees that the pledgee held only a qualified interest in the claim. But having indorsed their name in blank, they virtually authorized the holder to transfer or dispose of the certificate by writing an absolute assignment over their signature. Had it, therefore, appeared in this case that Cowdrey paid any money for the certificate, and took it with the assignment which he himself afterwards wrote over the signature of the complainants, we are inclined to think that his defence would have been sustainable. But as he has not shown that he parted with any value for the claim, and no assignment was at the time indorsed over the blank signature, he must be treated as standing in the shoes of his alleged vendor, Blumenburgh.

*Decree affirmed.*

MR. JUSTICE SWAYNE dissented.