Mr. Justice Merrick
delivered the opinion of the coart.
These cases come before this court, in the first instance, *248 certified from the circuit court upon exceptions taken to the award of referees.
The reference stipulated that the referees should make separate findings of law and of fact, and should, together with their award, and as part of it, certify and return all the evidence, and all their findings of law and of fact into the circuit court.
The evidence and the findings of law and of fact are, therefore, all brought into court for revision. Now the power of a court, when all the facts and the law are brought before it on the face of the award, plainly is to review and set aside the award if it can be successfully challenged for any patent mistake of. law or fact apparent upon the face * of the proceedings. The court will, of course, observe the same hesitation to disturb the findings of fact upon evidence, which it would observe were there a motion for new trial after the verdict of a jury, and will not disturb such findings unless they be unsupported by evidence, or be so far opposed to the great preponderance of evidence as to leave the court free from doubt that the referees have erred in their conclusions of fact. The rules governing courts in such predicament are nowhere more clearly and concisely stated than in that admirable book, Adams’ Equity, marginal pages 192 and 193.
Turning now to the exceptions in this case, the most important in principle and in the amount involved, are taken to the determination of the referees, that the defendant is responsible to the plaintiff for the face value, less what is shown to have been realized by him, of all the certificates of the Auditor of the Board of Public Works which were issued to him for work done, and which he hypothecated with third parties by endorsement in blank of himself or his constituted attorneys,' and which were, by the holders thereof, presented to and redeemed by the Board of Audit with 3.65 bonds, issued in virtue of the act of June 20, 18J4. So far as we can understand the somewhat confused findings, the referees base their conclusions in great part upon the tenth general finding of facts (p. 126, printed *249 award) to the effect that the Board oi Public Works having failed to make monthly payments according to contract, Strong notified the defendant that he would be compelled to suspend work if the monthly payments were not made; whereupon certain members of the Board of Public Works, with the knowledge of all the others and without objection on the part of any, promised that if he would continue his work by borrowing money on his own notes, secured by pledges of auditor’s certificates, the board would seasonably provide money for the payment of his notes; but they did not promise to make good all or any losses incurred from the sales of certificates at a sacrifice, in satisfaction of such pledges.
Now, assuming for the moment this finding to be accurate in point of fact, it is difficult to understand how such a promise to provide money to meet notes at maturity, or, in other words, to pay their already past due and dishonored debt at some newly designated period, could render the promisor liable in damages for not maintaining their own credit. The promise is, in substance and effect, an iteration of this existing or continuing obligation to pay an overdue debt, and nothing more nor less. But it is to be noted that the referees do not find any act or resolution of the board in their official character; and we are not aware of any authority or principle of justice, for holding that unofficial statements by any or all the members of a public body, at different times and places, made without that joint official deliberation for which the law provides, can be binding upon the municipality. There is no record of any such action or conclusion of the members of the Board of Public W orks. The testimony of Magruder, the treasurer, contradicts the conclusion of the referees; and the testimony of Shepherd, the president, was not even taken upon this subject. It would be of most dangerous, not to say fatal tendency, to sanction the notion that parol testimony of witnesses, were it clear and unqualified, could be admitted at the end of ten or twelve years to establish a contract of any kind by a municipal agency required *250 by law to act within a very narrow range of power, and to keep a record of its public transactions. But to so loose an undertaking as the one now asserted (and which, moreover, was not within the scope of the delegated powers of the board, however formally it might have been entered into), a court could attach no efficacy. But how stands the matter in other aspects of the referee’s findings, so far as the rights and obligations of the District are involved ? Samuel Strong was in need of money to prosecute large contracts which he deemed valuable to himself, and which, if you please, he was much urged to consummate. He did what many other persons were doing to the extent of perhaps millions of dollars; he took the certificates of the auditor for debts due by the District, and hypothecated them with third parties, in some cases in proper person, in others through attorneys and agents by him authorized, and delivered the hypothecated certificates to his pledgees endorsed, sometimes in blank or with a printed power of attorney or assignment over the signature, and threw them thus upon the public market. Floating side by side with such certificates and with precisely similar forms of endorsement, were other like certificates which he had sold, out and out. He made no distinction in the forms of his endorsements, as a prudent man would and ought to have done, between hypothecated certificates and those he had sold absolutely. In this state of things, the act of June 20, 1874, was passed (18 Stat. at L., p. 126, ch. 337), reorganizing the whole structure of the District government. By the 6th section of that law, all and every of the claims of Samuel Strong against the District derive their efficacy, if they have any force at all. W ithout the vitalizing influence of that statute, as this court has already adjudged in 1 Mackey, 265, he would have no standing in court for any purpose upon the claims advanced in this controversy. All the world had constructive notice of the functions conferred upon the Board of Audit by that law; and the board was required by it to give, and did give, notice to all persons having claims against the District to present them for liquidation, and the *251 board was authorized to give to the claimants certificates of indebtment for their claims, which might be presented and allowed after full investigation, which certificates were to be exchanged at par for 3.65 bonds, by a sinking fund commissioner. Now Strong knew that his auditor’s certificates had -been endorsed as above described and were outstanding, and might be presented to the Board of Audit for redemption, as in fact they all were presented and redeemed in 3.65 bonds.
It became, then, his duty to see to it that the Board of Audit should be in possession of any facts on which he might rely as an objection to the redemption of the certificates in favor of the possessors who, he knew, held through himself or his attorneys prima facie title to them. He did not do so; and not having done so, he was guilty of laches, and must be held to have allowed their payment in that manner without objection. See Adams’ Case, 17 Ct. Cls., 351.
But it is said that Strong gave notices by virtue of which the District is chargeable with knowledge of the infirmity of the title of his assignees, viz., by his advertisements in the Evening Star of the 18th of December, 1813, and January 9, 1814, see 12th finding. And the 13th finding conveys the idea that the Board of Audit was not authorized to pay those who held Strong’s hypothecated certificates without giving him notice in fact of their presentation.
In Adams’ Case, 17 Ct. Cls., 351, it was shown that the plaintiff had filed a protest with the treasurer of the Board of Public Works, specifically claiming certain enumerated certificates which had been fraudulently disposed of by his pledgee; that notice was not filed with the board, and what became of it did not appear. Yet it was held that in the absence of the fact of this specific notice being brought home to the knowledge of the Board of Audit, he was concluded from claiming those certificates, they having been redeemed and paid to the holders in 3.65 bonds by the Board of Audit. In that case it having been held, first, that it *252 was the duty of the original owners to appear before the Board of Audit and there give notice of their claims; and, secondly, that a specific notice which had been given to the treasurer of the Board of Public Works, who was a member of that body, not brought home to the knowledge of the board was of no avail to preserve- the equities of the original holder — it is vain to assert that the general notices of Strong, published in an evening paper, can signify anything. The decision in Adams’ Case is adopted by the Supreme Court in Looney’s Case, 113 U. S., 260. They there say that the nature and history of auditors’ certificates, the so called sewer certificates and other securities of the District, as well as the legislation of Congress relating to them, have been fully stated in opinions delivered by the Court of Claims, and need not be recapitulated, and then refer by name to Fendall’s Case, Adams’ Case and Morgan’s Case. The Court of Claims then having -stated the nature of these certificates and the effect under the legislation of Congress of their redemption, and the Supreme Court having unqualifiedly approved" those cases, which contain explicit statements that, by the endorsement in blank of the original holders, the possessors became clothed with an apparent ownership, which, in the absence of explicit notice of the equities of the original party, justified the Board of Audit in causing -them to be extinguished by an issue of 3.65 bonds to the possessor and ostensible proprietor; and that unless the true owner did give notice in fact to the Board of Audit he was guilty of laches, and must be held to have consented to and allowed their payment in that manner. The position taken by the referees that Samuel Strong is not chargeable with the full face value of all the auditor’s certificates which he ever held, and which have been liquidated with 3.65 bonds, is manifestly erroneous. But long before those cases, the Supreme Court had decided in Cowdrey vs. Vandenburgh, 101 U. S., 576; the principle applicable to all choses in action whether negotiable or non-negotiable in the commercial sense, to wit: that when a party makes a blank *253 assignment lie contemplates that the blanks may he filled up, if necessary, by the holder, and that the rights of innocent parties do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken' confidence, he caused or allowed to appear to be vested in the. party making the conveyance thereof. It is further to be considered that this case is not a dispute between the first ■owner and any assignee, hut it is a.dispute between the ■creditor and his debtor, which debtor by and through a means and apparent authority furnished to him by the creditor himself, and after a public notice warning him and all others, to produce their claims, if any, before a lawful agency for liquidation, has been induced to pay the demand in full.
To allow him under such circumstances to he paid over again, would be gross injustice to an innocent public.
The errors into which the referees fell upon this' question, being patent on the face of their award, permeating nearly all of the claims, and the consequence of them being an allowance of largely more than double of what the plaintiff could recover upon all his claims together, were there no mistake of law or fact in any other matter, the court would he compelled to set aside the award.
Besides this fatal defect, and making every allowance for liberty of judgment in doubtful matters to the referees, there is an eminent probability that, with respect to some large allowances to which exceptions was taken, the referees have fallen into error. ;
Multitudinous as are the items in dispute between the parties and voluminous as is the evidence, this court cannot undertake to discharge the duties of an accountant, comparing all the items of complicated transactions, and then striking the exact balance. ' Without so doing we could suggest no exact basis of settlement, even were the right of a court to cut down an award and adjust the final *254 balance clear, a question on wbicb we express no opinion. Being therefore unable to indicate an exact and definite result,, we are satisfied, after mature consideration, that it would not be appropriate to designate those eminently probable miscarriages to which'allusion is made; possible prejudices might arise to one or other of the parties from such expression, and we are not satisfied that an identification of those questionable allowances would result in promoting any settlement of the controversy. We are the more induced to this course from the fact that, after all the investigations which have taken place, the skilled professional advisers of the parties have before them all the elements to enable them, upon a careful review of the case, to approximate at least a result which will accomplish substantial justice, and terminate, by private convention between themselves, a protracted and vexatious litigation. The court will give an order vacating and annulling the whole award.