## LAUGHLIN *v.* DISTRICT OF COLUMBIA.

APPEAL FROM THE COURT OF CLAIMS.

Argued January 14, 1886.—Decided January 25, 1886.

A, having done work on the streets of Washington under a contract with the board of public works, received certificates that his accounts were audited and allowed for specified amounts ; on pledge of which he borrowed money of B, giving his note therefor shortly before the abolition of the board by Congress, and the creation of the board of audit.  A requested the treasurer of the board of public works in writing, not to pay these certificates, but assigned no reason for the request.  Afterwards C presented them to the board of audit, by whom they were allowed, and C received district bonds for them under the law.  Neither B nor C has accounted to A for the certificates, nor returned his note.  A sued the District for the amount due on the certificates. *Held,* That he had no cause of action.

'This was a suit in the Court of Claims against the District of Columbia. The facts are stated in the opinion of the court.

*Mr. Enoch Totten* for appellant.

*Mr. Solicitor-General* for appellee.

Mr. CHIEF-JUSTICE WAITE delivered the opinion of the court.

This is a suit brought July 28, 1880, under the act of June 16, 1880, ch. 243, 21 Stat. 284, by Matthew J. Laughlin against the District of Columbia to recover an amount claimed to be due upon five certificates of the auditor of the board of public works. The facts are these:

Laughlin contracted with the board of public works to do certain work and furnish certain materials in grading the streets in Washington. The work was done and the board, according to its usage with contractors, issued to the attorney in fact of Laughlin certificates of accounts allowed by its auditor, as follows:

"No. 4763.    Office of Auditor of Board of Public Works,
        Washington, D. C., Dec. 24th, 1373.

" I hereby certify that I have this day audited and allowed the account of M. J. Laughlin, per J. F. Murray, att'y, for work, as per schedule, amounting to fifteen hundred dollars.

"$1500.                J. C. LAY, Auditor."

'Three other certificates for $6000, $5000, and $2000 respectively, numbered 4764, 4766, and 4767, were issued to the same person and in the same form, all having the same date. Another certificate for $597 was also issued, but as the right to recover on that was abandoned at the argument it need not be specially referred to.

. After the certificates were issued Laughlin demanded payment from the treasurer of the board of public works, which was refused for want of funds. He then borrowed money on them from Rudolph Blumenburg, at the rate of thirty-three cents on the dollar of their face value, giving his notes for the

amount borrowed, and delivering the certificates indorsed by him in blank as collateral. Certificates Nos. 4764, 4766, and 4767 were hypothecated January 20, 1874, and No. 4763, February 14, 1874.

On or about the 5th of June, 1874, a written document was delivered to James A. Magruder, treasurer of the board of public works, which he filed with the papers of the board, where it has ever since remained, and of which the following is a copy:

"Washington, D. C., June 5th, 1874.
"Col. James A. Magruder, treasurer B. P. W.

"Sir: I do most respectfully ask of you not to pay the following auditor's certificates, dated December, 1873, issued to 'M. J. Laughlin, per J. F. Murray, attorney,' viz: No. 4763, for $1500; No. 4764, for $6000; No. 4766, for $5000; No. 4767, for $2000.

"Also a certificate issued in the name of M. J. Laughlin, No. 4426, for $597.

Very respectfully,
J. F. MURRAY."

Previous to that date Laughlin had orally notified Magruder not to pay the certificates, but at what exact time does not appear. He did not, however, bring any suit to enjoin the payment or conversion of the certificates, or to establish his interest in or title to them.

On the 20th of June, 1874, Congress passed "An act for the government of the District of Columbia and for other purposes," ch. 337, 18 Stat. 116, by which "all provisions of law providing for an executive, for a secretary for the District, for a legislative assembly, for a board of public works, and for a delegate in Congress in the District of Columbia," were repealed, and a commission created to exercise "all the power and authority now lawfully vested in the governor or board of public works of said District," except as thereinafter limited. This commission was authorized to "take possession and supervision of all the offices, books, papers, records, moneys, credits, securities, assets, and accounts belonging or appertaining to

the business or interests of the government of the District of Columbia and the board of public works, and exercise the power and authority" conferred by the act. By § 6 the First Comptroller of the Treasury and the Second Comptroller of the Treasury of the United States were constituted a board of audit "to examine and audit for settlement," among other things, "the debt purporting to be evidenced and ascertained by certificates of the auditor of the board of public works." This board was required to "issue to each claimant a certificate, signed by each of said board and countersigned by the comptroller of the District, stating the amount, found to be due to each and on what account." Power was given the board to "subpœna witnesses, administer oaths, and examine witnesses under oath," and it was allowed "full access to all of the records, books, papers, and vouchers of every kind whatsoever of the board of public works;" "and to the end that said books and accounts may be thoroughly examined, and the indebtedness of the District and of the board of public works, and the state of the books and accounts of the officers aforesaid, may be accurately ascertained," the board was authorized to "employ one or more skilful and impartial accountants . . . and such other assistants as they may deem necessary to make examination of said books, vouchers, and papers, and discharge their duties, . . . and shall procure inspection of such bank books and papers as may be necessary." The board was also to give notice for the presentation of claims, and no claim could "be audited or allowed unless presented within ninety days after the first publication of such notice." By § 7 the sinking-fund commissioners were required to exchange the three-sixty-five bonds of the District at par for like sums of any debt evidenced by certificates of the board of audit.

. On the 16th of July, 1874, N. A. Cowdrey presented the certificates now in dispute to this board of audit for allowance and settlement. Before their presentation, and after their delivery by Laughlin to Blumenburg, there had been printed over the indorsement in blank which was on them when delivered the following:

"For value received, the within debt is assigned and transferred to N. A. Cowdrey, who is authorized to collect the same for his own use." This was done without the knowledge of Laughlin. Certificates of allowance were issued to Cowdrey in due form by the board of audit, and these were taken up by an exchange of bonds for them by the sinking-fund commissioners. Neither Blumenburg nor any assignee of his has accounted to Laughlin for the proceeds of the certificates, nor returned the notes for which they were transferred as security.

Upon these facts the Court of Claims gave judgment against Laughlin, and to reverse that judgment this appeal was taken.

It has been settled in this court, that if the owner of certificates of the auditor of the board of public works, like those now in question, places them in the hands of a third person, indorsed in blank, so as to give him apparent authority for their collection, payment by the District to the person so invested with apparent authority, without notice of a want of actual authority, will discharge the debt. *Cowdrey* v. *Vanderburg*, 101 U. S. 572; *Looney* v. *District of Columbia*, 113 U. S. 258. The Court of Claims so held in *Adams* v. *District of Columbia*, 17 C. Cl. 351, decided at the December Term, 1881, which was but a little more than a year after the act giving that court jurisdiction in this class of cases was passed.

Such being the law, the only question we have now to consider is, whether the letter of June 5, 1874, addressed by the attorney of Laughlin to the treasurer of the board of public works and placed on file with the papers of the board, makes the District answerable to Laughlin for the amount due on the certificates notwithstanding the payment to Cowdrey upon the allowance by the board of audit. The Court of Claims was of opinion that it did not, and in this we concur

The board of audit was in no sense the board of public works or its successor. It was a department of the District government established "to examine and audit for settlement" certain classes of the debt of the District. It was invested for this purpose with *quasi* judicial powers. The commission, which was the general governing body of the District, had no

control over it. No claim against the District of either of the classes this board was required to audit could be paid except upon a certificate of allowance signed by each of the members of the board and countersigned by the comptroller of the District. The board could not begin its work until public notice had been given the creditors of the District to appear and present their claims, and it could act only for a limited period. This notice was to all the world and required all who had claims to appear or suffer the consequences if they kept away. Laughlin was bound to take notice of the statute creating the board and of the duties of the board in respect to claims like his. He knew that his certificates were outstanding in the hands of some one invested by him with an apparent title as owner, or at least with an apparent authority to collect them. He knew or ought to have known that the holders of the certificates might present them and demand their allowance. The law charges him also with notice of the power of the board to examine witnesses and consider the rights of contesting parties. It is true he may have had the right to suppose that his letter to the treasurer of the board of public works would be brought to the attention of the board, but that letter was nothing more than a request to the treasurer not to pay. No reason was assigned for the request, and no statement was made of the facts connected with the title or authority of the person who might present them for payment. If the certificates had been presented to the treasurer after the letter was delivered to him, it would have been his duty to notify Blumenburg before payment, so that the proper steps might be taken to contest the right of the holder to the money. But when the office of treasurer of the board of public works was abolished and the board of audit created, an entirely new condition of things arose. The statute authorizing the board gave notice to Laughlin that he must himself appear before that tribunal to assert his rights as against the holder of his certificates, or take some other steps to prevent their payment, and, if he did not, that his claim against the District might be lost. The board, even if his letter had been brought to its attention, would not have been compelled to give him any other notice to appear than that which

he already had. As he failed to appear at all, there was noth-, ing for the board to do but to act upon the evidence which was before it, and decide accordingly. In *Cowdrey* v. *Vandeburg* the suit was by Vandeburg, the owner of a certificate like those now in question, against Blumenburg and Cowdrey, to compel surrender of the certificate to him, upon allegations as to their title very similar to those which are here made against them. Upon proof of the charge against Blumenburg and a failure by Cowdrey to show that he paid value for the certificate, the decree sought was granted. So here, if Laughlin had appeared before the board and made his showing, it is possible he might have got the pay instead of Cowdrey, but he failed to do so, and it is now too late for him to assert his rights against the District.

The judgment of the Court of Claims is

*Affirmed.*