## FIRST NAT. BANK OF HEALDTON v. FERRELL et al.

No. 18765. Opinion Filed Jan. 7, 1930.

Rehearing Denied April 8, 1930.

Dolman & Dyer and Ames, Cochran, Ames & Monnet, for plaintiff in error.

Womack, Brown & Cund and J. B. Moore, for defendant in error Fred C. Ferrell.

JEFFREY, C. This appeal presents the question of priority between certain assignments of a chose in action. Fred C. Ferrell, plaintiff below, commenced the action against O. D. McClure, the First National Bank of Healdton, Okla., and the Carter Oil Company, as defendants, for judgment on his promissory note against McClure, and to foreclose his lien upon certain common stock of the Standard Oil Company of New Jersey, alleged to have been created by this assignment, and in the event the stock was found to have been disposed of by the First National Bank, plaintiff asked for an alternative judgment against said bank for the amount of the note. McClure permitted judgment to go against him by default, and a demurrer was sustained in favor of the Carter Oil Company to plaintiff's evidence. Neither McClure nor plaintiff is complaining of the judgment of the trial court, but the First National Bank alone has appealed.

Plaintiff and O. D. McClure were both employed by the Carter Oil Company. The

Standard Oil Company of New Jersey, in December, 1920, inaugurated what was termed a "stock acquisition plan," whereby the employees of that company, and of all of the subsidiary companies of the Standard Oil Company, were entitled to have deducted from their wages each pay day a sum not to exceed 20 per cent. thereof until December, 1925, for the purpose of purchasing common stock of the Standard Oil Company of New Jersey. The plan provided that the employing company would, upon order of the employee, deduct the amount of the wages specified, add thereto, from the funds of such company, an amount equal to 50 per cent. of the amount deducted, transmit the same to the board of trustees appointed by the board of directors of the Standard Oil Company to administer said plan, and at the end of the period, common stock in an amount equal to the sum standing to the credit of each employee would be issued him. The plan further provided, that in the event any employee should withdraw from the plan, the board of trustees would either repay the amount of money deducted from his wages with interest, or issue stock in that amount, but that the interest of the employee in the plan was to be personal, and not subject to assignment or transfer. The Carter Oil Company, being a subsidiary of the Standard Oil Company of New Jersey, the employees of the Carter Oil Company were permitted to participate in the stock acquisition plan. O. D. McClure, having subscribed to the stock acquisition plan, on April 15, 1925, executed to plaintiff an assignment of his claim, right, title and interest in and to sufficient of said money, funds, or stock due, or to become due him, under the provisions of said plan, to secure the payment of $1,196.70, owing to plaintiff. On April 17, 1925, McClure executed another assignment on the same fund and stock to the First National Bank of Healdton, Okla. On or about the 22nd day of May, 1925, McClure executed a third assignment to the Healdton State Bank, covering the same fund and stock to secure money loaned by that bank. On or about the 16th day of April, 1925, plaintiff presented his assignment and note, in the offices of the Carter Oil Company at Tulsa, Okla., to the general superintendent of Oklahoma, and to an assistant of the treasurer of that company, leaving a copy of each with these officials. On or about January 14, 1926, the Healdton State Bank secured from McClure an order directed to the trustees of the stock acquisition plan authorizing the delivery of the stock to said bank. Said order having been presented to the trustees, on or about April 1, 1926, all of McClure's matured stock in the amount of 110 shares was delivered to the said Healdton State Bank, although it was issued in the name of McClure. Thereafter, McClure assigned the stock to said bank by executing written assignments on the certificates. This bank later liquidated its assets, and the First National Bank, defendant herein, purchased the assets of the Healdton State Bank, including O. D. McClure's indebtedness to the Healdton State Bank, and that stock then held by it. The stock was later disposed of by the defendant, and was insufficient to satisfy its claim. This action is brought to foreclose a lien on the stock, and in the event it was found to have been sold, for a personal judgment against defendant. It appears that the defendant bank is relying on the rights of the Healdton State Bank to establish its right to the stock.

In the trial of the case, only one question was submitted to the jury for its determination, and that was whether or not the Healdton State Bank, at the time it took its assignment, had knowledge of the assignment to plaintiff. The jury found that at the time the Healdton State Bank took its assignment, it did not have knowledge of plaintiff's assignment, and the court adopted this finding of the jury, but rendered judgment for plaintiff, foreclosed his purported lien, ordered the stock sold, and further adjudged that if defendant had disposed of the stock, plaintiff have judgment against defendant for the amount of his debt.

Under appropriate assignments of error, defendant presents its argument under several propositions. The first proposition presented is that as between two assignees of a chose in action, the first registering it with the debtor has priority. Under this proposition, counsel cite Jack v. National Bank of Wichita, 17 Okla. 430, 89 Pac. 219; Citizens' National Bank v. Mitchell, 24 Okla. 488, 103 Pac. 720; and Market National Bank v. Raspberry, 34 Okla. 243, 124 Pac. 758. These cases clearly support the proposition, although it appears that this court fell into error in the first cited case, in attempting to follow Spain v. Hamilton's Administrator, 68 U. S. 604. The recent case of Salem Trust Co. v. Manufacturers' Finance Co. et al., 264 U. S. 182, distinguishes the former opinion and commits that court to a contrary doctrine to what is here contended for. In the Salem Trust Company Case, it is stated that that court has always recognized the maxim, "If equities are equal, the first in time is first in right," as controlling where there are no intervening legal rights.

and no conduct on the part of the first assignee amounting to an estoppel. The authorities are somewhat in conflict on the question, and we think it not necessary to undertake to harmonize them, or to determine whether or not the former pronouncements of this court should be adhered to, since we are convinced that the judgment of the trial court cannot stand the test of another equitable maxim.

We then pass to the second proposition advanced by counsel for defendant, which is that, as between two equitable assignees of a chose in action, the one who draws to his equity the legal title is to be preferred. The application made of this principle is that plaintiff and the Healdton State Bank both acquired equitable assignments; that said bank later completed its title by adding to its equity the legal title to the stock when it in good faith secured possession of the certificates; that defendant acquired all of the rights of the Healdton State Bank; and hence the equitable maxim, "Where equities are equal, the law will prevail," is controlling of the question. We are forced to the conclusion that the maxim finds application to the facts of the case, and is controlling of the appeal.

It is argued by counsel for plaintiff that the assignments, while denominated such, are not in fact assignments, but are more in the nature of chattel mortgages for security, and hence the equitable principles would not apply. But from careful investigation and thought, we conclude that even though the assignments were given to secure the payment of debts, if they carried any interest, it was only an equitable interest in a chose in action. The facts are, both plaintiff and defendant parted with a valuable consideration for the assignments; that plaintiff acquired his assignment first, but defendant had no notice or knowledge of plaintiff's assignment when the latter was obtained. Plaintiff testified that he presented his assignment almost immediately to the Carter Oil Company at Tulsa, Okla., and that the officers of said company promised to hold the McClure stock when it was issued, and to see that plaintiff got his money. This was denied by the officials of the Carter Oil Company, and while the evidence on the point is disputed, we are of the opinion that it is immaterial to a determination of the question under consideration. There is no evidence that notice of plaintiff's assignment was ever given directly to the Standard Oil Company of New Jersey, or the board of trustees of the stock acquisition plan. The case of Judson v. Corcoran, 17 How. 612, is in point. In that case, one Williams had a claim against Mexico on account of an illegal confiscation of a cargo. Under a treaty with Mexico, such claims were to be adjusted by the United States government, when allowed by a board of commissioners created by an Act of Congress. Judson acquired an interest in the claim by assignment. Later Corcoran acquired assignments for the whole claim. Corcoran prosecuted his claim before the board of commissioners, was, by that board, found to be the owner of the claim, and award was made in his favor, and he received payment. Six years after Judson had obtained his assignment, and after Corcoran had obtained an award of the board of commissioners, Judson brought suit against Corcoran for the amount of his claim. After stating the facts in the syllabus, the court held:

"* * * Ordinarily, the first assignee has the best right. An equity successively assigned in a chose in action to two innocent persons, their equities are equal. Here C. having drawn to his equity a legal title to the fund, the law must prevail. J. cannot set that legal title aside and have a decree in his favor."

In the case at bar, defendant did not know of plaintiff's assignment at the time it took its assignment, but did know about it prior to obtaining possession of the certificates of stock. In the case of Duber Watch-Case Mfg. Co. v. Daugherty, 62 Ohio St. 589, 57 N. E. 455, a somewhat similar question was involved, and it was there held, following Gibler v. Trimble, 14 Ohio, 323, that where the equities are acquired without notice, one of the claimants may obtain the legal title to the thing and prevail, even though he had notice of a prior equity at the time he did so, saying:

"This case clearly supports the doctrine that, where the equity is acquired without notice, the owner may protect himself against an earlier equity by acquiring the legal title, though at the time of so doing, he had notice of the earlier equity."

The case of Fitzsimmons v. Ogden, 7 Cranch, 2, 3 L. Ed. 249, is also authority for the proposition that where two claimants have equal equities, one of them is justified in perfecting his title by buying in the legal estate, and having done so will prevail, even over one holding a prior equity. See, also, Boone v. Chiles, 10 Pet. 176, 9 L. Ed. 400. 2 Pom., Eq. Jurisprudence (3rd Ed.) sec. 691, after stating the English rule, continues:

"In the United States a different, and, as it seems to me, more just, rule has gen-

erally been established, that where the estate subsequently purchased is the legal estate, a notice, in order to be binding, must be received before the purchaser pays the price or parts with the other valuable coneration. In other words, if he actually pays the valuable consideration without any notice, a notice afterwards given does not preclude him from completing the transaction, obtaining a conveyance of the legal title, and thereby securing the precedence due to a bona fide purchaser for a valuable consideration and without notice."

The same eminent author, in section 712 of the same volume, continues as follows:

"In the discussion of the foregoing paragraphs, it has been constantly assumed that the assignee had acquired only an equitable title, in order that he might take subject to the equities subsisting in favor of a prior assignee or of a third person. If, in addition to his equitable interest conferred by the assignment, he has also obtained the legal title, or even if his situation is such that he has the best right to call for the legal title, then the doctrine of purchase for a valuable consideration and without notice may apply so as to protect him against all such outstanding equities. * * *"

From an examination of the authorities on the question, it is without question a prerequisite to obtaining superiority of right by a subsequent equity holder obtaining the legal estate to the property, that his conduct in so doing be free from fraud and bad faith. In so far as the record discloses, defendant has met this requirement, since there is no element of deceit, but merely an acquisition of the legal title to the corporate stock for the purpose of protecting its rights. We therefore hold that at the time the assignments of the respective parties were obtained, both plaintiff and defendant parted with value, without notice of any prior assignment, and obtained equal equities in the fund held by the board of trustees to the credit of O. D. McClure, and, after the maturity of the stock, held equal equities in the stock; and that defendant, having added to its equity possession and legal title to the stock, was and is entitled to prevail. Other questions are presented and argued, but our views herein expressed render them immaterial.

The judgment of the trial court in favor of plaintiff and against the defendant First National Bank of Healdton is reversed and remanded, with directions to enter judgment in favor of defendant First National Bank of Healdton.

BENNETT, HERR, DIFFENDAFFER. and TEEHEE, Commissioners, concur.

By the Court: It is so ordered.