# NATIONAL SAFE DEPOSIT, SAVINGS AND TRUST COMPANY OF THE DISTRICT OF COLUMBIA *v.* HIBBS.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 79; Argued April 14, 15, 1913.—Decided June 10, 1913.

A bank's trusted agent, in gross breach of his duty, took certain stock certificates belonging to the bank, endorsed and authenticated with evidence of title, to a broker who, in ordinary course of business and in good faith, sold them to third parties for full value and paid over the proceeds to such agent. *Held,* in a suit by the bank against the broker that:

Where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it.

Stock certificates are a peculiar kind of property; although, strictly speaking, not negotiable paper, they are frequently the basis of commercial transaction and bought and sold in open market as negotiable securities are. *Bank* v. *Lanier,* 11 Wall. 369.

The fact that principles affecting the matters involved are well known to business men and are constantly acted upon by them should be given due weight in determining the rights of parties in a transaction relating to the sale of stock certificates. *Russell* v. *Am. Bell Telephone Co.,* 180 Massachusetts, 467, approved.

Under the principles of equitable estoppel, the bank is estopped to make any claim against the broker.

32 App. D. C. 459, affirmed.

THE facts, which involve the question of liability of a broker for sale of stolen stock certificates, are stated in the opinion.

*Mr. Charles L. Frailey,* with whom *Mr. A. S. Worthington* was on the brief, for plaintiff in error.

*Mr. J. J. Darlington* and *Mr. W. C. Sullivan* for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

This case is in this court upon writ of error to the judgment of the Court of Appeals of the District of Columbia, 32 App. D. C. 459, affirming the judgment of the Supreme Court of the District of Columbia in an action brought by the plaintiff in error, hereinafter called the Bank, against the defendant in error for the alleged conversion of certain shares of stock. The case was tried upon an agreed statement of facts, from which it appears:

The plaintiff in error has been doing a general banking business in the City of Washington, including the making of loans to its customers on promissory notes secured by stock collateral and, to a limited extent, the buying and selling of stock for its customers and occasionally for itself.

On March 12, 1903, the Bank made a loan to one T. M. Kelley of $12,500, for which he gave his promissory note, payable on demand, and deposited with the Bank certain stock certificates of the Mergenthaler Linotype Company as collateral security. Each of the certificates stood in the name of T. M. Kelley and on its face recited that it was transferable by him, in person or by proxy, only upon the books of the company upon surrender of the certificate, and each upon its back contained an assignment with power of attorney to transfer the stock upon the books of the company, signed in blank by Kelley, whose signature was duly attested.

One Willard H. Myers had been in the continuous employ of the Bank for over twenty years and had committed no acts inconsistent with his duty to the Bank and was trusted as a faithful employé. During the last ten years of his employment he had been general bookkeeper and assistant note teller, a part of his duties being to receive and enter upon the cash book of the Bank the payment of loans by customers and to procure from one of the officers of the Bank and deliver to such customers

the collateral security pledged for the loans, it being usual, in the ordinary course of business, for the Bank to thus deliver certificates to him upon his request. He had no authority and it was not a part of his employment to dispose of, by sale, pledge or otherwise, any stock held as collateral by the Bank or owned by it or any of its customers.

On May 26, 1904, Myers requested the secretary of the Bank to procure from the vault where such securities were kept the certificates deposited by Kelley, whereupon the secretary delivered the certificates to Myers, in the usual course of business, for the purpose of having them returned to Kelley, similar requests having been made by Myers prior thereto. Kelley had not paid the loan or asked for the delivery of the stock, and Myers made no entry in the cash book.

The day following, May 27th, Myers delivered two of such certificates to the cashier of the defendant in error, a stock broker, for sale on his account, and at the request of the cashier, as was the usual custom where the signatures of the assignor and attesting witness are unknown, Myers, as a further identification of such signatures, signed his name to the attestation clause of the assignment. The defendant in error being out of the city, the certificates were turned over to another broker, by whom they were on that day sold on the Washington stock exchange, and on the same day Myers received the check of the defendant in error for the proceeds of the sale, which he subsequently cashed.

Myers did not represent to the cashier of the defendant in error that he was selling the stock for the Bank or that he was acting for it in any way, or indicate that he did not own the stock, nor did the defendant in error or his cashier know or have cause to suspect that the stock did not belong to Myers. The stock was sold, however, without the knowledge or consent of the Bank or Kelley. By

the custom of banks, brokers and others dealing in stock, which custom was known to the Bank, the possession of stock certificates assigned in blank and attested, as were the certificates here in controversy, has been recognized, in the absence of knowledge or cause of suspicion to the contrary, as evidence of ownership or of authority to sell, pledge or otherwise deal with such certificates as the owner might do.

Certain of the other certificates deposited by Kelley were disposed of by Myers, some in like manner through the defendant in error, for which Myers received the proceeds, others being hypothecated with The American Security & Trust Company, while the rest were surrendered by Myers to the authorities.

In this case conflicting legal principles are invoked and relied upon. For the defendant in error the familiar principle "that where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss, must sustain it" is advanced. The plaintiff in error invokes the principle that where the owner of property, such as stock certificates, has lost it by the criminal or fraudulent act of another, the owner not voluntarily or negligently conferring upon such another the indicia of ownership or apparent title, cannot be deprived of his property by the attempted transfer of title to a third person for value, no matter how innocent the purchaser may be of knowledge of the crime or fraud by which the property was acquired.

In this case the diligence of counsel has called to the attention of the court many cases more or less applicable to the facts herein involved. We will not stop to pass them in review. It is enough to say that they have been attentively considered.

Stock certificates are a peculiar kind of property. Although not negotiable paper, strictly speaking, they are the basis of commercial transactions large and small, and

are frequently sold in open market as negotiable securities are. In *Bank* v. *Lanier*, 11 Wall. 369, 377, 378, this court said:

"Stock certificates of all kinds have been constructed in a way to invite the confidence of business men, so that they have become the basis of commercial transactions in all the large cities of the country, and are sold in open market the same as other securities. Although neither in form or character negotiable paper, they approximate to it as nearly as practicable. . . . Whoever in good faith buys the stock, and produces to the corporation the certificates, regularly assigned, with power to transfer, is entitled to have the stock transferred to him."

These principles are well known to business men and are constantly acted upon by them. This circumstance should be given due weight in determining the rights of the parties in this case.

In *Russell* v. *American Bell Telephone Co.*, 180 Massachusetts, 467, a certificate of stock signed in blank was delivered to an agent for the purpose of surrendering it to the company in order to obtain a new certificate. He wrongfully obtained an advance on the strength of the certificate by putting it in pledge. Dealing with the contention that the case was like one where the certificate had been stolen and therefore no title could be transferred, Mr. Justice Holmes, delivering the opinion of the court, said: (p. 469)

"In *Scollans* v. *Rollins* it is admitted that the general principle there laid down would not apply to an instrument indorsed in blank and stolen before it had been transferred. We shall not examine the premises of this defence because we cannot accept the conclusion. The qualification of the rule, as not applying when the instrument is stolen, is not based upon the name of the agent's crime but upon the fact that in the ordinary and typical case of theft the owner has not intrusted the agent with the document and therefore is not considered to have

done enough to be estopped as against a purchaser in
good faith. He certainly has not done enough if the
estoppel is based upon the principle that when one of
two innocent persons is to suffer the sufferer should be
the one whose confidence put into the hands of the wrong-
doer the means of doing the wrong. But in a case like
the present the agent has been intrusted with the con-
verted property, and it is totally immaterial whether,
by a stretch which extends larceny beyond the true field
of trespass, his wrong has been brought within the crim-
inal law or not. The ground of the estoppel is present
and the estoppel arises. The distinction is not new. On
the one side are cases like *Knox* v. *Eden Musee Americain
Co.*, 148 N. Y. 441, where an agent or servant simply had
access to a document remaining in the possession of the
owner; on the other, cases like *Pennsylvania Railroad's
Appeal*, 86 Pa. St. 80, where possession is intrusted to
the agent for one purpose and he uses it for another. It
cannot matter in the latter class that the agent intended
the fraud from the outset."

We think this case correctly states the principle, and
applied to the case in hand is decisive of it. Here one of
two innocent persons must suffer and the question at
last is, Where shall the loss fall? It is undeniable that
the broker obtained the stock certificates, containing all
the indicia of ownership and possible of ready transfer,
from one who had possession with the Bank's consent,
and who brought the certificates to him, apparently
clothed with the full ownership thereof by all the tests
usually applied by business men to gain knowledge upon
the subject before making a purchase of such property.
On the other hand, the Bank, for a legitimate purpose,
with confidence in one of its own employés, entrusted
the certificates to him, with every evidence of title and
transferability upon them. The Bank's trusted agent,
in gross breach of his duty, whether with technical crim-

inality or not is unimportant, took such certificates, thus authenticated with evidence of title, to one who in the ordinary course of business sold them to parties who paid full value for them. In such case we think the principles which underlie equitable estoppel place the loss upon him whose misplaced confidence has made the wrong possible. Applying this principle, we think the Court of Appeals was right in affirming the judgment of the Supreme Court; and its judgment is

*Affirmed.*