Missouri Pacific Railroad Company *v.* Bland.

Opinion delivered January 26, 1925.

Carriers—delivery by mistake—liability.—Where defendant ordered an engine from W., and paid W. therefor, without knowing that W. had turned the order over to another company which shipped the engine to its own order and sent the bill of lading to a bank with draft attached, and plaintiff carrier delivered the engine to defendant on payment of the freight, *held* that defendant was not liable to plaintiff as for conversion, but the loss would fall on plaintiff.

Appeal from Lawrence Circuit Court, Eastern District; *Dene H. Coleman,* Judge; affirmed.

*Thomas B. Pryor* and *Ponder & Gibson,* for appellant.

Appellant was liable to the shipper for having delivered the shipment without the surrender of the bill of lading. 10 C. J. 259; 160 S. W. 403; 89 Ark. 342; 77 Ark. 482. Appellant paid the shipper and took an assignment of the cause of action, and has the right to maintain the action. A carrier in such a case may recover the amount so paid from the person receiving the goods, where the delivery was made by mistake. 10 C. J. p. 268; 34 So. 357; 51 N. H. 490; 25 Barb. (N. Y.) 597; 128 S. W. 585; 116 Ark. 198. 72 Ark. 471; 77 Ark. 482. Where goods are forwarded C. O. D. and are obtained from the carrier

without payment by the consignee, he acquires no title, and the carrier may recover them in an action of replevin or sue for the amount due. 79 Fed. 92.

*W. P. Smith, L. L. Gibson* and *A. S. Irby,* for appellee.

The cases cited by appellant in 77 Ark. 482, 89 Ark. 342, 116 Ark. 198 and 72 Ark. 471 are distinguished on the facts from the present case. Where a party in good faith accepts the property, pays the freight and the carrier does not offer to pay back the freight, and is negligent in the wrongful delivery; it would not be a wrongful conversion, on the theory that where somebody must lose, it must be the party that is at fault, and the doctrine of subrogation to the rights of the consignor would have no application here. 110 N. Y. S. 379, 59 Misc. 167; 10 C. J. 269.

Smith, J. This cause was tried in the court below on the following agreed statement of facts:

"It is hereby agreed that L. A. Bland, the above-named defendant, purchased from the Williams Mill Manufacturing Company of Texarkana, Arkansas, one 27 H. P. Kruger Atlas engine with necessary equipment, on Feb. 6, 1920, and that said engine was to be shipped to L. A. Bland at Hoxie, Arkansas; and at that time the said Bland paid on the purchase price of said engine $500, and executed his notes for the balance purchase price, the vendor retaining title to said engine until the purchase price was fully paid; and later, and prior to the time said engine was shipped, the said Bland paid $370 more on the purchase price of said engine.

"That, without any knowledge on the part of the said Bland, the Williams Mill Manufacturing Company placed its said order received by it from the said Bland with the San Antonio Machine & Supply Company, of San Antonio, Texas, for shipment and delivery to L. A. Bland at Hoxie, Arkansas. That on May 4, 1920, the San Antonio Machine & Supply Company forwarded to their order, notify L. A. Bland, Hoxie, Arkansas, the above make gasoline engine, which was covered by G.

H. & S. A. waybill No. 132, dated May 15, 1920. Said shipment was covered by Hoxie, Ark., freight bill F-9, the said shipment of machinery being what is known as shipper's order, having been shipped by the San Antonio Machine & Supply Company to itself at Hoxie, Arkansas, and bill of lading and draft sent to the State National Bank of Texarkana, Arkansas, to be paid by the Williams Mill Manufacturing Company.

"That said shipment was, in June, 1920, received at Hoxie, Ark., and plaintiff's agent notified the said Bland of its arrival, the notice stating only that there was due on said shipment the sum of $135.51 freight charges. That, upon receipt of said notice, the said Bland called at plaintiff's office in Hoxie, Ark., paid the freight charges of $135.51, and plaintiff's agent delivered said engine to him.

"That the said Bland had no knowledge or information that said engine was the property of or claimed by the San Antonio Machine & Supply Company, or that there was charges against it of $1,073.25, as shown by the bill of lading and draft which was sent to Texarkana, Ark., or that said shipment was sent shipper's order, until long after the delivery of said shipment to him, and that he did not pay the draft or surrender the draft and bill of lading at the time the engine and machinery was delivered to him.

"That the above-named plaintiffs have never been paid the amount of $1,073.25 due on said shipment by Bland or any one else, and, to avoid litigation, these plaintiffs paid the San Antonio Machine & Supply Company said sum, as they were demanding of plaintiffs the return of said shipment or the value thereof. And that said plaintiff received from the San Antonio Machine & Supply Company an assignment of all its rights in and to said claim and shipment, and any rights it might have in any cause of action against the defendant Bland.

"That the said Bland paid $870 on the purchase price of said engine to the Williams Mill Manufacturing Company, the concern from whom he bought same, before

he had any notice from plaintiffs or any one else claimed or had an interest in said shipment; that the outstanding notes for the balance purchase price on said engine executed to the Williams Mill Manufacturing Company by the said Bland are now in the hands of the State National Bank of Texarkana, Arkansas, who claim to be innocent purchasers of same for value.

"That the Williams Mill Manufacturing Company, about the time of the shipment above referred to, or shortly thereafter, became bankrupt, and all of its assets were taken charge of by the bankrupt court at Texarkana, Arkansas, and its notes, including the notes of the said Bland, were sold.

"That the plaintiffs have never offered or tendered to the defendant Bland the amount of freight charges paid by him on said shipment.

"It is further stipulated and agreed that L. A. Bland has been in the possession of said engine ever since its delivery to him, as above stated, and is now in the possession of same."

The plaintiff railroad company asked the court to make certain declarations of law, which, if made, would have entitled it to a judgment for the sum it had paid the San Antonio Machine & Supply Company, but the court refused these requests, and made the following finding of fact and declaration of law:

"And the court, after hearing argument of counsel, is of the opinion that the declaration of law requested by the plaintiff should not be declared as the law of this case, and finds, upon the theory and argument of the defendant, that the machinery in question was paid for by the defendant, L. A. Bland, to the Williams Mill Manufacturing Company, and that there was no privity of contract or obligation existing between the defendant and San Antonio Machine & Supply Company, and that the plaintiff delivered said machinery to the defendant voluntarily and accepted the freight therefor due it, and has not at any time tendered said freight back to the defendant, and that the plaintiff knew, or should have

known, bill of lading shipper's order was attached, and should have notified said defendant of such facts, in order that he might protect himself against the payment for said machinery twice, which would be the consequence of finding for the plaintiff in this cause.

"And that there was no tortious conversion of said property by the defendant for his own use, and that said machinery was delivered to the party to whom it was shipped, and that the notice given to the defendant by the plaintiff was merely to pay the freight, which he did, took the machinery in good faith, and not by any wrong, fraud or deception."

Upon this finding the court rendered judgment in favor of the defendant, and the railroad company has prosecuted this appeal to reverse that judgment.

Appellant company cites cases which announce the law to be that, where a shipment is consigned shipper's order, the title remains in the shipper until he orders a delivery of the goods, and that delivery can be made only on production and surrender of the bill of lading covering the shipment; and that, if delivery is made without requiring the surrender of the bill of lading, the carrier is liable to the consignor, or to the person entitled to receive the shipment, for the value thereof, and that this is especially true where the shipper's order bill of lading has attached to it a draft on the buyer, or where the bill of lading or shipping receipt contains the direction that a third person shall be notified of the arrival of the goods, the carrier is not authorized to treat the person to be notified as the consignee, and, if it delivers the goods to him without production and surrender of the bill of lading, it will be liable to the true owner of the goods for any loss resulting from such delivery. Sections 371 and 372, chapter on Carriers in 10 C. J., p. 259, and cases cited in the notes to the text.

Other cases are cited by the appellant to the effect that when, through mistake, fraud, or otherwise, the carrier has been induced to deliver goods to a person

not entitled thereto, and he refuses to return them, the carrier may maintain an action against him for the recovery of the goods or for their value. If the carrier, after delivery to the wrong person, on demand, pays the consignee their full value, it may recover from the person the money so paid as paid to his use, where the delivery is made by mistake. Section 383, chapter on Carriers in 10 C. J., page 268, and cases there cited.

The principles of law stated have received recognition by this court in the cases of *Fordyce* v. *Dempsey,* 72 Ark. 471; *Arkansas Southern Ry. Co.* v. *German National Bank,* 77 Ark. 482; and *Tedford* v. *C. R. I. & Pac. Ry. Co.,* 116 Ark. 198. But we have here a case where the delivery was not a mistake in the ordinary sense of that term, nor was the delivery induced by any fraud or other wrongful act of appellee. From his standpoint appellee was entitled to have the delivery made to him, as was done, upon payment of the freight. He had paid for the articles shipped, principally in cash, and the balance in negotiable notes, which are outstanding against him, if they have not already been paid. It affirmatively appears that appellee would not have recived the shipment if he had been advised that delivery would be made to him on condition only that he pay for the goods a second time. The carrier, of course, had the right to withhold delivery until the draft drawn by the consignor had been paid, but it did not do so. It made the mistake of making delivery without exacting payment, and some one must suffer as a consequence of this error. Who should bear this loss?

The instant case is not unlike the case of *Long Island Rd. Co.* v. *Structural Concrete Co.,* 110 N. Y. Supp. 379, decided by the Supreme Court, Appellate term, where the court said: ''On behalf of the plaintiff it is urged that the facts make out a case of conversion, on the principle that, where a common carrier delivers goods by mistake, the person to whom they are delivered is liable in conversion, citing Hutchinson on Carriers )3rd

ed.), § 863. It is unnecessary to determine what would be the situation if the plaintiff had delivered the goods by mistake in the usual acceptance of that term, and the defendant had received them through mistake or in bad faith. But in this case it would appear that the carload was delivered intentionally by the plaintiff's agents, and was received in good faith by the defendant, and that the goods were paid for by the defendant to the person from whom the defendant purchased the same. Under such circumstances I think the loss should remain where it is, and that the trial justice was right in dismissing the complaint.''

Under the facts recited herein, the appellant railroad company would have the right to recover the sum which it was required to pay the consignor, but for the fact that it was its own mistake which caused the trouble. One of two innocent parties must suffer, and, under these circumstances, the loss was properly placed by the trial court on the one whose mistake was responsible for the loss, and that judgment is therefore affirmed.