## SOUTHERN PAC. CO. v. BANK OF AMERICA.

District Court, N. D. Illinois, E. D. January 31, 1928.

No. 36293.

1. **Warehousemen ⟨⟩17—Bank held bona fide purchaser for value of warehouse receipts without notice of infirmity (Uniform Warehouse Receipts Act, §§ 41, 58).**

Bank loaning money to vendee on warehouse receipts and taking receipts as security, without knowledge that vendee had fraudulently procured delivery of goods by carrier without production of bill of lading, *held*, in view of Uniform Warehouse Receipts Act, §§ 41, 58, as against carrier, a bona fide purchaser for value of warehouse receipts, without notice of infirmity.

2. **Property ⟨⟩12—Owner of merchandise cannot be deprived of title except by consent, or existence of facts estopping him from asserting title.**

No owner of merchandise may be deprived of title thereto except by consent, or by existence of such facts as will create an estoppel against him to assert his title.

3. **Sales ⟨⟩234 (3, 6)—Neither thief nor trespasser can convey good title to merchandise.**

A thief can convey no title to bona fide purchaser, nor can a trespasser or other tortious taker convey a good title.

4. **Sales ⟨⟩234(5)—One securing title to property by fraudulent representations may convey good title to bona fide purchaser.**

One securing title to property by fraudulent representations may convey good title to a bona fide purchaser, as the vendor is estopped to assert its rights.

5. **Warehousemen ⟨⟩17—Bona fide purchaser for value of warehouse receipts held entitled to property as against carrier knowing that vendee had fraudulently procured delivery without bill of lading.**

Bank, which was a bona fide purchaser for value from vendee of warehouse receipts without notice of infirmity, *held* entitled to property covered by receipts as against carrier, from whom vendee fraudulently obtained delivery of goods without production of bill of lading, where carrier took assignment of bill of lading and draft after knowledge of such fraud.

Action by the Southern Pacific Company against the Bank of America. Judgment for defendant.

John A. Sheean, of Chicago, Ill., for plaintiff.

Newman, Poppenhusen, Stern & Johnston, of Chicago, Ill., for defendant.

LINDLEY, District Judge. Ono & Co., of San Francisco, shipped to Chicago certain crab meat, imported from Japan, taking a bill of lading from plaintiff, Southern Pacific Railway Company, for the delivery of the merchandise in Chicago, to the order of the shipper, vendee to be notified. The consignor sold and assigned the bill of lading, and sight draft for $37,000 on its Chicago vendee accompanying same, to the Pacific National Bank, who forwarded it to a bank in Chicago for collection, with instructions to surrender the bill of lading upon payment of the draft. Upon presentation, the vendee said that the goods had not arrived, and that it would not honor the draft until their arrival.

Immediately thereafter, however, vendee, discovering the goods in Chicago in possession of plaintiff's delivering carrier, fraudulently procured their delivery by the railroad without production of the bill of lading, and in violation of its provisions that the merchandise should not be delivered until the bill should be surrendered, and at once deposited the goods in a public warehouse, taking negotiable warehouse receipts therefor. Defendant, Bank of America, without notice of any infirmity in the vendee's title, at the latter's request, loaned it $34,000, taking the receipts, duly assigned, as security. The Pacific National Bank, discovering the facts with regard to the wrongful procuration by the vendee, demanded that plaintiff recognize that it, through its agent, had wrongfully, though innocently, delivered the goods, and pay therefor. This the plaintiff did, taking an assignment of the bill of lading and draft for $37,000.

Armed with these muniments of title, plaintiff demanded of defendant the surrender of the merchandise, and, that being refused, instituted this replevin suit. Plaintiff claims that the original vendor's title has never passed to defendant, either by its consent or by estoppel, and that as successor to that title plaintiff is the present owner as against the fraudulent vendee and the defendant, even though the latter made its advancement in good faith upon the warehouse receipts. Defendant asserts that plain-

tiff, having by its agent's wrongful delivery made possible the negotiation of the warehouse receipts, is estopped to assert its title as against defendant, for the reason that, where one of two innocent persons must lose, he who made the loss possible should suffer.

[1] The first question presented is as to the position of defendant. Section 58 of the Uniform Warehouse Receipts Act, in force in Illinois (Smith-Hurd Rev. St. 1927, c. 114, § 290), provides that "to purchase includes to take as mortgagee or as pledgee"; "value is any consideration sufficient to support a simple contract;" and·"a thing is done 'in good faith,' within the meaning of this act, when it is in fact done honestly, whether it be done· negligently or not." Defendant had no knowledge whatever of the outstanding order bill of lading, or of any other facts or circumstances affecting the invalidity of the title of the original vendee. It relied .upon the apparent title of the warehouse receipts, and upon that reliance advanced the sum of $34,000. The fact that the borrower was then heavily indebted to the bank is not important, in view of the fact that the loan was made upon the goods, and not the credit of the borrower.

In Commercial National Bank v. Canal-Louisiana· Bank, 239 U. S. 520, 36 S. Ct. 194, 60 L. Ed. 417, the court said: "The negotiation of the receipt to a purchaser for value without notice is *not impaired by the fact* that it is a breach of duty or that *the owner of the receipt was induced 'by fraud, mistake or duress' to intrust the receipt to the person who negotiated it.* And, under section 41 [Act La. No. 221 of 1908], one to whom the negotiable receipt has been duly negotiated acquires such title to the goods as the person negotiating the receipt to him, or the depositor or person to whose order the goods .were deliverable by the terms of the receipt, either had or 'had ability to convey to a purchaser in good faith for value.' The clear import of these provisions is that if the owner of the goods, permits another to have the possession or custody of negotiable warehouse receipts running to the order of the latter, or to bearer, it is a representation of title upon which bona fide purchasers· for value are entitled to rely, despite breaches of trust or violations of agreement on the part of the apparent owner." Defendant, therefore, should be treated as a bona fide purchaser for value of the warehouse receipts, without notice of infirmity.

[2-5] Plaintiff succeeded to the title of the Pacific National Bank under the bill of lading. It did so, however, after its agent had wrongfully delivered the goods to the vendee, and the latter had· assigned the warehouse receipts to defendant for value, and with full knowledge of those facts. It now contends that its title, thus acquired, is superior to that of the defendant. No owner of merchandise may be deprived of the title thereto, except· by his consent, or by the existence of such facts as will create an estoppel against him to assert his title. A thief can convey no title to a bona fide purchaser, nor can a trespasser, or other tortious taker· of merchandise, convey a good title thereto. However, one who secures title to property by fraudulent representations may convey good title to a bona fide purchaser. The vendor is there estopped to assert its rights.

Here, by its fraudulent representations, the vendee persuaded the delivering carrier to surrender the goods. That delivery was a conscious, voluntary delivery, induced by fraud, true it is, but none the less a delivery consciously and voluntarily made, a delivery within the apparent scope of the ·plaintiff's agent's authority. The goods were not stolen; they were not received by the vendee as a result of a trespass, but consent to delivery was fraudulently procured. It follows that the purchaser from the vendee stands in the position of the purchaser from any fraudulent vendee, whose rights by virtue of the doctrine of estoppel are well recognized as being superior to those of the vendor or .parties in privity with him. In this situation it would be contrary to the established law to allow the plaintiff, who has purchased its title with full knowledge of the facts, to prevail against the bona fide purchaser, for its act, through its agent, made possible the procurement of the negotiable warehouse receipts and the sale thereof by the vendee. ·

. In Pere Marquette Ry. Co. v. French & Co., 254 U. S. 538, 41 S. Ct. 195, 65 L. Ed. 391, the court had before it the question of .whether one who acquires by purchase a negotiable bill of lading, after wrongful delivery of the goods by the carrier, and with full knowledge of all of the facts, may be treated as a bona fide purchaser for value. The court said: "The plaintiffs * * * took back the bill of lading after the events here in question, with full knowledge of them, and because of them. The purchaser whom the act protects is he who is entitled to assume that the carrier has not delivered the goods and will not thereafter deliver them except to a person who holds the bill of lading. The purpose of sections 10, 11, and 12 [Comp. St. §§ 8604ee, 8604f, 8604ff] is to give bills of lading attributes of commercial

paper. Here the plaintiffs were not buying commercial paper, but a lawsuit."

Other courts have asserted similar estoppels. So in the case of Long Island R. Co. v. Structural Concrete Co., 59 Misc. Rep. 167, 110 N. Y. S. 379, where the goods had been delivered wrongfully, but voluntarily, by the railroad company to one who had paid the fraudulent consignee therefor, the court said: "On behalf of the plaintiff it is urged that the facts make out a case of conversion, on the principle that, where a common carrier delivers goods by mistake, the person to whom they are delivered is liable in conversion. * * * In this case it would appear that the carload was delivered intentionally by the plaintiff's agents, and was received in good faith by the defendant, and that the goods were paid for by the defendant to the person from whom the defendant purchased the same. Under such circumstances I think the loss should remain where it is, and that the trial justice was right in dismissing the complaint. * * * There was no conversion under such a state of facts, and the doctrine of subrogation to the rights of the consignor would have no application here, because the consignor would have no right of recovery against the defendant."

In Missouri Pac. R. Co. v. Bland, 167 Ark. 390, 268 S. W. 22, the court said: "The carrier, of course, had the right to have withheld delivery until the draft drawn by the consignor had been paid, but it did not do so. It made the mistake of making delivery without exacting payment, and some one must suffer as a consequence of this error. Who should suffer as a consequence of this error? Who should bear this loss? * * * One of two innocent parties must suffer, and under these circumstances, the loss was properly placed by the trial court on the one whose mistake was responsible for the loss."

In Chicago Great Western R. Co. v. Lowry et al., 119 Kan. 336, 239 P. 758, the court said: "The plaintiff desires to be relieved from the consequences of its negligence and place those consequences on the innocent holder of the notes and mortgage and the bona fide purchaser of the truck. As between the plaintiff and the holder of the mortgage, and as between the plaintiff and the purchaser of the truck, the plaintiff should suffer the loss, because by the negligence of the plaintiff it became possible for the holder of the mortgage and for the purchaser of the truck to assume those relations innocently." Other authorities, illustrating similar exemplifications of the proposition that the principles which underly equitable estoppel place

the loss upon him whose misplaced confidence has made the wrong possible, are National Safe Deposit Co. v. Hibbs, 229 U. S. 391, 33 S. Ct. 818, 57 L. Ed. 1241, and those cited in 21 Corpus Juris, 1170.

We find in plaintiff's authorities no case in which the court allowed to a carrier a recovery of merchandise, as against an estoppel pleaded by a bona fide purchaser for value from one who has wrongfully obtained from the carrier, or its agent, the conscious delivery of the goods.

The court, therefore, finds the issues for the defendant. Judgment shall be entered for the return of the property, or, in the alternative, that the plaintiff shall pay the defendant the amount for which the same is now rightfully held as security by the defendant, with interest thereon at the rate designated in the note held by defendant, from the date of the receipt of the warehouse receipts by the defendant.