740

Ray Martin, Sr., of Toledo, Ohio, for plaintiff.

J. Eugene Farber, of Toledo, Ohio, for defendant.

PICARD, District Judge.

Findings of Fact.

This court makes the following findings of fact.

This is an action brought by plaintiff, Hartford Accident and Indemnity Company, a corporation of Hartford, Connecticut, v. The Feilbach Company, a corporation of Toledo, Ohio, to compel defendant to transfer to plaintiff on its stock record books Certificate No. 96 for 204 shares of its stock, now in the name of Lillian Feilbach, also of Toledo, Ohio. On or before April 16, 1926, Lillian Feilbach, following the death of her husband, became the owner of said stock and at about the same time turned over possession of said certificate, without endorsement, to her son-in-law, William H. Gunckle, a banker and man of good reputation and standing, also of Toledo. Gunckle was merely the custodian of said stock, it being left with him for the purpose of safekeeping only and without any authority to endorse Mrs. Feilbach's name upon the certificate or to transfer, assign, or pledge the same.

On or before May 13, 1936, plaintiff as surety upon the bond of said Gunckle, as administrator of an estate then pending in the Probate Court of Lucas County, Ohio, was compelled to pay to said estate the sum of $5,242.56, the amount owed by said Gunckle to said estate and for which he was then in default. Plaintiff naturally insisted upon reimbursement by said Gunckle and to satisfy plaintiff's claim, Gunckle executed his note to plaintiff for the above amount, delivering as collateral therefor said certificate No. 96 of The Feilbach Company, owned by Lillian Feilbach. Said certificate has since been in possession of plaintiff and bears an endorsement in blank with the name "Lillian Feilbach" written thereon but not signed, authorized, or ratified by her.

Default having been made on the note, on or about June 26, 1940, plaintiff presented said certificate to The Feilbach Company for transfer and this the company refused to do.

According to the evidence, Lillian Feilbach did not know until after commencement of this action that said certificate had been turned over to plaintiff by said Gunckle, who incidentally is now serving a jail sentence on some other charge, and she did not

know that plaintiff had possession of said stock or claimed any interest therein. At no time has plaintiff had any communication with Lillian Feilbach, the real owner, in person or otherwise, nor did she communicate in any way with it. The court finds therefore that Lillian Feilbach performed no act with reference to or in connection with said certificate other than to give possession thereof to Gunckle her son-in-law and that she has never assigned, transferred, or pledged it to anyone.

The court further finds that before Gunckle gave possession of said stock to plaintiff he represented to plaintiff that it was owned by his wife, and plaintiff on inquiry learned that his wife's name was Vera Feilbach Gunckle. When plaintiff saw that the stock was made out to "Lillian Feilbach" and not "Vera Feilbach Gunckle", it called Gunckle's attention to the difference in names and was informed that "Vera Feilbach Gunckle" and "Lillian Feilbach" were one and the same person, to-wit, Gunckle's wife, and that for this reason his wife had endorsed said certificate by signing both names "Vera Feilbach Gunckle" and "Lillian Feilbach". Plaintiff attempted to get confirmation of Gunckle's statement by Mrs. Gunckle's affidavit to that effect and in this connection, made two trips to the Gunckle home. Later plaintiff received from Gunckle what purported to be such an affidavit signed by his wife and plaintiff relying upon such representation made no further inquiry or investigation. It is the finding of this court that if plaintiff suspected Gunckle of any fraud in the first place making Mrs. Gunckle's affidavit necessary as a precaution, it certainly would understand that Gunckle would not hesitate much in forging his wife's name to an affidavit if necessary. It did not communicate with The Feilbach Company or Lillian Feilbach, both of whom were in Toledo where the transfer took place and both were listed in the telephone and city directories at that time.

The court finds that the endorsement of the name "Lillian Feilbach" on the transfer of the certificate was forgery. It makes no finding in connection with Vera Feilbach Gunckle, since this court deems it immaterial whether the daughter, Vera Feilbach Gunckle, conspired with her husband or not.

The court further finds that there is no showing or evidence that said Gunckle had assets from which he could or would have paid the amount owing to plaintiff May 13th, 1936 or that he has since come into possession of said assets nor is there any evidence that plaintiff was placed in a disadvantageous position as a result of accepting said stock certificate. We further find that said plaintiff in accepting said stock did not rely on the certificate being in the name of the mother, Lillian Feilbach, but really being property of the daughter, Vera, and that there was no duty on the part of Lillian Feilbach to speak concerning the transfer since there is no evidence that it was ever brought to her attention or that she knew what had taken place.

This court further finds that there was no negligence on the part of Lillian Feilbach and that her acts were such as one would find in any normal family. It is not the custom to look over one's stock certificates and there is no evidence of any occasion arising up to 1940 when it would be considered negligence on the part of Lillian Feilbach to leave that property with her son-in-law. On the other hand, we find that plaintiff having in 1936 discovered Gunckle in default to an estate of which he was the administrator, should have been on guard and was placed on notice then and there to carefully scrutinize any transactions where he appeared to be pledging property belonging to another. If there is any negligence here, it is not the negligence of Mrs Feilbach, but the negligence of plaintiff in accepting a telephone affidavit rather than what the law contemplates—the presence of the person making the affidavit. An affidavit back in 1936 properly secured would have either established that the daughter, Vera, was in with her husband's fraudulent scheme or the perfidy of Gunckle would have been there discovered.

### Conclusions of Law

Plaintiff relies on the rule that where one of two innocent persons must suffer, he who made the wrong possible must bear the loss. This is a well known and sound principle of law. 19 Am.Jur., Equity, 483, 484; National Safe Deposit, etc. Co. v. Hibbs, 229 U.S. 391, 33 S.Ct. 818, 57 L.Ed. 1241.

Plaintiff claims the theory applicable here because when Lillian Feilbach entrusted the certificate to her son-in-law, Gunckle, she put it in his power to forge her name.

But we have already found in this case that there is no negligence on the part of Lillian Feilbach and if there is, there is a corresponding negligence on the

742

part of plaintiff. In any event, we do not believe that the above doctrine applies where there has been forgery. Before the owner could be estopped, he must have given the wrong-doer the indicia of ownership or title. Possession or control is not sufficient. See 7 A.L.R. 677; Townsend v. Union Trust Co., D.C., 2 F.Supp. 734.

This latter case states: "Rule that one of two innocent persons who enables third person to occasion loss must sustain it held inapplicable in case of forgery."

There must also be a duty to speak on her part. Estoppel by conduct cannot be effected unless there is misrepresentation of facts or wilful concealment of them, made with knowledge of the facts to one ignorant of them, with intent of having the other act, and in such event the party must have thereby been induced to act. Allenbaugh v. City of Canton, 137 Ohio St. 128, 28 N.E.2d 354. See also Lubric Oil Company v. Drawe, 26 Ohio App. 478, 160 N.E. 93; Shinew v. First National Bank, 84 Ohio St. 297, 95 N.E. 881, 36 L.R.A.,N.S., 1006, Ann.Cas.1912C, 587; Prince v. Childs Co., 2 Cir., 23 F.2d 605; Western Union Telegraph Co. v. Davenport, 97 U.S. 369, 24 L.Ed. 1047.

Therefore this court holds that Lillian Feilbach is now and has been the owner of certificate No. 96 since April 16, 1926, that she is not estopped from asserting her ownership thereof and is entitled to immediate possession of the same.