Scileppi, J.
The appellant has brought this action to recover some $12,600 plus accrued interest, which he had on deposit in his savings account with the respondent bank. It is alleged that respondent has refused to honor his demand and that $12,000 in cash was paid to a person other than appellant, who presented his stolen passbook. Respondent defends upon the ground that section 10 of its by-laws, rules and regulations provides that it shall be discharged from liability upon payment to persons presenting the bank book. Additionally, it is alleged that the payment of $12,000 was in good faith and in the exercise of due care.
The matter proceeded to trial and resulted in a judgment in favor of appellant. The Appellate Division reversed and ordered a new trial on the ground that certain business records showing the similarity between appellant’s signature on file with the bank, and that relied on by respondent in making the payment, which were excluded, should have been admitted in evidence (35 A D 2d 541). At the second trial appellant testified that he was employed as a first engineering officer in the Merchant Marine, and opened the account on July 22, 1965 with a cash deposit of $3,500 and, at that time, he placed his signature on a card on which he supplied certain personal data such as his occupation, date and place of birth, father’s name and mother’s maiden name. He was given a passbook which he kept on his person at all times. Subsequent deposits were made between voyages and it was stipulated that on July 10, 1967, appellant had a balance of $13,205.71. On July 31, 1967 appellant made a withdrawal of $500 leaving $12,705.71 in the account. He had finished a voyage and was staying at the Hotel President in Manhattan.
*139 On Sunday, August 6, 1967, appellant remained in his hotel room until 11:30 p.m. when he went out to eat. He returned at approximately 1:00 a.m. on August 7, retired at 3:00 a.m. after watching television and was awakened at 8:30 a.m. by a chambermaid who told him that his door was open. Appellant immediately noticed that his money and trousers — in which he had a black leather folder containing his union books, Coast Guard papers and hank book—were missing from the room. After borrowing a dollar from the hotel manager, he went to the respondent bank in Brooklyn to report that his passbook had been stolen. He arrived there at 9:45 a.m. and was taken to see a Mr. Zully, a hank attorney, who informed him that someone had just withdrawn $12,000 from his account. Appellant identified himself by supplying certain personal information which was in the bank records and he testified at the trial that Messrs. Mackie and Cain, the tellers who had authorized the withdrawal, were called to Zully’s office and stated that appellant was not the man who had received the money. Appellant maintained that the signatures on the withdrawal slip and on a hank check cashed as a part of the transaction were not his. Apart from $100 given to him by the bank on that day, respondent has refused to return any of his funds.
Respondent’s only witness was Robert L. Wassmer, a bank officer who supervised respondent’s records. He had no personal knowledge of the withdrawal transaction, but testified that bank records indicated a $12,000 cash withdrawal on the day in question and was able to identify the withdrawal slip and check signed by the person withdrawing the money. Although he could not testify as to the details of the withdrawal transaction and had no personal knowledge as to whether the tellers compared the signature with the original on file, he was able to identify the stamp of the teller Mackie, and the initials of the supervisor Cain on the withdrawal slip.
At the time of the trial, Mackie and Cain were no longer bank employees and their whereabouts were unknown. Respondent attempted to introduce reports which they prepared shortly after the transaction, but they were ruled inadmissible. Wassmer testified that according to bank procedures and regulations a withdrawal slip and passbook were required for withdrawal orders. The teller had the responsibility of comparing the
*140 signature on the withdrawal slip with that on the card kept on file and, where the withdrawal was for more than $1,000, the comparison would also be made by a supervisor. If both were satisfied with the signatures, no test questions would be asked. Additionally, since the person presenting appellant’s passbook had requested cash, he was required to sign the withdrawal slip in the presence of the tellers and indorse a check made out to his order.
In rebuttal, appellant called Frank P. Plunkett, Assistant Treasurer of the Bank of Commerce. Though he had never worked for a savings bank, he had 40 years of banking experience in institutions which had savings departments. In answer to a hypothetical question, Plunkett testified that a reasonable banker would require a teller to refer a large withdrawal to an officer, who, if he had any questions, would ask the customer to correctly supply the information reported by the depositor on the signature card.
Each side unsuccessfully moved for a directed verdict- and, after deliberation, the jury found that appellant was entitled to $13,759.96 with interest from April 24, 1969. Respondent’s motion to set aside the verdict was denied. On appeal, the Appellate Division, finding that the signatures on the withdrawal slip and check were “ almost identical ” to the genuine one in respondent’s records, concluded that, as a matter of law, no evidence of negligence on the part of respondent had been presented to create a jury question. Accordingly, the judgment in favor of appellant was reversed on the law, and the court directed judgment for appellant, $660.67 with interest from April 24, 1969, the amount of his balance after the $12,000 withdrawal.
The view reached in the court below is predicated upon an 1875 decision of our court which addressed itself to a situation similar to that now before us (Appleby v. Erie County Sav. Bank, 62 N. Y. 12). A depositor had sought recovery against a savings bank which had made a payment to a person presenting a passbook and signing the depositor’s name on a receipt. The bank kept a signature book and there was evidence that, though there was some discrepancy between the signature in the book and the one on the receipt, a teller had compared them and was satisfied that the signature on the receipt was genuine. *141 The depositor appealed from a judgment entered on a directed verdict in favor of the bank. Our court affirmed. Noting that the bank was required to exercise due care, and could not escape liability by reference to a by-law which authorized payment to those who presented a passbook, Chief Judge Chueoh wrote that: “ if the two signatures were so dissimilar as when compared the discrepancy would be easily and readily discovered by a person competent for the position, then the failure to discover it would be evidence of negligence which should have been passed upon by the jury. It would not be evidence of negligence if the difference was not marked and apparent, or if it would require a critical examination to detect it, and especially if the discrepancy was one as to which competent persons might honestly differ in opinion.” (Id., at p. 18.)
Although Appleby and a subsequent decision (Kelley v. Buffalo Sav. Bank, 180 N. Y. 171, 181) suggest that the question whether the bank has exercised due care, and thus, satisfied its burden of proof may be treated as one of law where the apparent forgery is similar to the genuine signature, we are not persuaded that these authorities are dispositive of appellant’s claim against his bank. It is our view that the Appellate Division has failed to place them in their proper perspective.
In litigation of this nature, it must be emphasized that we do not deal with questions relating to the law of negotiable instruments where the Legislature has adopted a rule which prevents the signature of a forger from being operative as that of a person whose name is being used (Uniform Commercial Code, §§ 3-401, 3-404). Those who honor such a signature do so at their own peril and are accountable to the person whose name is forged. Although it is arguable that a similar rule should apply to withdrawals from savings banks because the bank is in a better position to bear the loss, it is our view that, until such time as the Legislature chooses to impose such a rule of strict liability, controversies such as that now before us must be resolved according to principles of common law. The parties stand in a debtor-creditor relationship. Where the bank defends upon the ground that the debt has been paid to a person presenting a passbook, it bears the burden of proving that defense and must establish by a preponderance of the evidence that, under the circumstances, it exercised due care and diligence in *142 ascertaining the identity of the person to whom it has given the money (Noah v. Bowery Sav. Bank, 225 N. Y. 284, 288-289; Gearns v. Bowery Sav. Bank, 135 N. Y. 557, 562). Thus, respondent, charged with the responsibility of safeguarding the interests of its depositors, was required to prove to the satisfaction of the jury that the circumstances surrounding the withdrawal transaction were such as would not arouse the suspicion of its employees. “If at the time a fact or circumstance was brought to the knowledge of the defendant’s officers [or other employees] which was calculated to and ought to have excited the suspicion and inquiry of an ordinarily careful person, it was clearly their duty to institute such inquiry, and their failure to do so presented a question for the consideration of the jury.” (Gearns v. Bowery Sav. Bank, 135 N. Y. 557, 562, supra).
Stated differently, it is the withdrawal transaction which defines the scope of the bank’s duty and cases such as Appleby v. Erie County Sav. Bank (62 N, Y. 12, supra) and Kelley v. Buffalo Sav. Bank (180 N. Y. 171, 181, supra) do no more than indicate that in the usual case the bank will be exonerated if its employees have compared the signature on the withdrawal slip with the one in their records and found that the difference, if any, was not marked or apparent. In such a case the similarity of the signatures would preclude a finding that the bank employees were negligent in their verification of the signatures. Since the signature on the withdrawal slip is the only matter which should have caused suspicion and there is no dispute as to whether a comparison was in fact made, there is nothing for the jury to decide and the issue of due care may be resolved as a matter of law under Appleby and Kelley. Under those limited circumstances, the bank is not to be faulted for a failure to make any additional inquiry.
A manifestly different situation is presented in the appeal before us and it cannot be said that respondent has established its defense as a matter of law. Here, in addition to the withdrawal slip, check and signature card, evidence relating to the withdrawal transaction revealed that the passbook was presented soon after the bank opened on a Monday morning and that a cash withdrawal of $12,000 out of a balance of $12,700 was demanded by the person presenting the passbook. Respondent, unable to introduce evidence directly related to the trans *143 action, attempted to satisfy its burden by evidence of its usual custom, which, according to appellant’s expert testimony fell short of prudent banking practices. Although respondent had certain personal data in its records, according to its procedures, no additional inquiry would be made if the tellers were satisfied with the authenticity of the signatures. On this showing, sufficient evidence was presented to create a jury question as to whether, under all the circumstances, a mere checking of signatures satisfied respondent’s obligation to exercise due care.
Accordingly, the order appealed from should be reversed and the action remitted to the Appellate Division for review of the facts (see CPLR 5613).
Chief Judge Ftjld and Judges Bubke, Bebgan, Bbeitel, Jasen and Gibson concur.
Order reversed, with costs, and the case remitted to the Appellate Division for further proceedings in accordance with the opinion herein.