395 S.E.2d 517

**Gary C. MILNER**

v.

**Garfield H. MILNER, Jr., and the Montgomery National Bank.**

**No. 19251.**

Supreme Court of Appeals of West Virginia.

July 12, 1990.

Dissenting Opinion July 24, 1990.

Jack W. DeBolt, Barber & DeBolt, Charleston, for Gary C. Milner.

Steve Vickers, Montgomery, for Garfield H. Milner, Jr. and the Montgomery Nat. Bank.

WORKMAN, Justice:

This case is before the Court upon the appeal of Gary C. Milner from an order of the Circuit Court of Kanawha County granting the Appellee's, Montgomery National Bank's (hereinafter referred to as the bank), motion to set aside the appellant's jury verdict against the bank in the amount of $19,600.00 [1], ruling that there was insufficient evidence to support that portion of the judgment against the bank [2]. The jury also returned a verdict in favor of

---

1. The actual jury verdict was for $19,743.95, but the bank confessed judgment of $221.88 which represented the interest paid to Milner, Jr. after the death of his father Milner, Sr. when the money in the account was clearly the sole property of Gary Milner.

2. Originally, the bank moved for a directed verdict at the close of plaintiff's case-in-chief. The court denied that motion but found that "I just don't find a scintilla of evidence that this bank was negligent in honoring the power of attorney in this case." The reason for keeping the bank in the action at that time was due to the court's concern that a directed verdict might prejudice the other parties. Therefore the court ruled that even though it was keeping the bank in the case, if a jury verdict against the bank was returned, it would at that time grant a motion to set aside such portion of the verdict in favor of the bank.

the appellant and against Garfield H. Milner, Jr. (hereinafter referred to as Milner, Jr.) in the amount of $19,600.00 which is not the subject of this appeal. The appellant's only assignment of error is that the court erred in setting aside the verdict of the jury in favor of the appellant Gary Milner and against Montgomery National Bank and, for the sake of consistency, that the court erred in setting aside the verdict of the jury in favor of Montgomery National bank on its cross-claim against appellee Milner. We find that the lower court committed no error in setting aside that portion of the appellant's jury verdict obtained against the appellee bank and therefore affirm.

The evidence at trial revealed that on September 26, 1979, Garfield H. Milner, Sr. (hereinafter referred to as Milner, Sr.) signed over his power of attorney to his son Gary Milner. Gary Milner testified that he never took any action using this power of attorney.

On October 5, 1979 the appellee, Milner, Jr., obtained his father's signature on another power of attorney [3] while his father, Milner, Sr., was hospitalized and known to be terminally ill. This power of attorney was presented to appellee bank the same day it was executed, with a request for withdrawal of $19,600.00 from a savings account jointly owned by Gary Milner and Milner, Sr. [4]

According to the testimony of bank president Guy S. Dooley, Jr., when the bank was presented with the power of attorney [5], the president phoned the bank's attorney and conferred with him about the contents of the document. Next, the bank president phoned the attorney who had notarized the document. That attorney acknowledged that he had prepared the power of attorney and that the document was authentic. The bank president then called the hospital where Milner, Sr. was a patient; however, no contact, was ever made with Milner, Sr., and no documentation exists regarding the name of the individual with whom the bank president communicated at the hospital. Further, the bank president, in his testimony, was not asked to explain why he was unable to contact Milner, Sr.

The bank did not attempt to call Gary Milner as reflected in the bank president's testimony. Moreover, the bank president did not inquire of Milner, Jr. his reasons for withdrawing the money in the savings account, even though the savings account had been established at the bank for many years and according to bank records introduced at trial, while there had been substantial deposits into the account over the

---

**3.** There was no indication in the record that the bank had any knowledge of the power of attorney previously obtained by Gary Milner.

**4.** Milner, Sr. died on October 11, 1979. His will, subsequently submitted to probate, indicated that the savings account jointly owned by him and Gary Milner was bequeathed to Gary.

**5.** The contents of the power of attorney were as follows:

That I, Garfield Milner, a resident of London, Kanawha County, West Virginia, do hereby name, constitute and appoint my son, Garfield Henry Milner, of Washington, D.C., my true and lawful attorney in fact, for me and in my name, place and stead, to prepare all tax returns which may be required of me by laws or regulations, now or hereafter, and to pay all taxes which may be lawfully assessed against me and to receive any and all refunds or adjustments in taxes as may be made to me; to look after, handle and be responsible for my banking services, including the power to receive money, make depos-

its, draw checks on my account and to pay any and all of my lawful obligations with funds from my said account; to negotiate, execute, acknowledge and deliver any lease, bills of sale, deeds, stockes [sic], bonds or other instruments for the management, handling and disposition of my real estate and personal property; to collect, receive and receipt for all rents, income and money due to me from any source whatsoever; and to do and perform any and all other acts and deeds necessary, related or incidental to the accomplishment of the foregoing objectives and purposes.

My reason for executing this power of attorney, giving full power and authority to my son, Garfield Henry Milner, is because of my advanced years and state of health, and it is my purpose to give to my said son, Garfield Henry Milner, full power and authority to act for me in any and all matters which I might be called upon to handle and look after if I were able so to do.

Given under my hand and seal at Charleston, Kanawha County, West Virginia this 5th day of October, 1979....

years, there had not been a withdrawal from the account for a number of years.

Consequently, based on the withdrawal request made by Milner, Jr., the bank delivered a cashier's check personally payable to Milner, Jr. in his individual capacity and not as attorney in fact for his father Milner, Sr. Milner, Jr. then used those funds he received, in most part, for his own personal use.

The only issue before the Court is whether the trial court erred in setting aside $19,600.00 of the jury verdict awarded in favor of the appellant and against the appellee bank. The appellant contends that there was sufficient evidence to support the verdict and therefore the lower court erred in setting it aside. The appellee bank, however, contends that setting aside the verdict was not in error since the bank did indeed inquire into the power of attorney, the power of attorney had no limitation which would have precluded Milner, Jr. from doing that which he did, and the bank had no duty to warn anybody about anything or tell anybody how to act regarding the use of power of attorney.

The Supreme Court of the United States addressed an issue very similar to the one in the present case in *Empire Trust Co. v. Cahan*, 274 U.S. 473, 47 S.Ct. 661, 71 L.Ed. 1158 (1927). In that case, the Court was faced with a situation involving an adult son who had received an unlimited power of attorney from his father for accounts at two banks,[6] namely the Bank of Montreal and Guaranty Trust Company of New York. Specifically, the son was given the authority to draw checks on both accounts, with no qualification concerning the purposes for which the checks could be drawn. For a period of approximately two years, from October 1916, until July 1918, the son withdrew funds using checks made out to his own order or Empire Trust Company (hereinafter Empire Trust) in which he signed his father's name by himself as attorney. *Id.* at 478, 47 S.Ct. at 662. All but two of the checks drawn were certified

by Guaranty Trust. *Id.* Those funds were then deposited into the son's individual account at Empire Trust. Subsequently, the son made withdrawals on his individual account and used the money to his own benefit. It was not until the end of 1919 that the father discovered the fraud his son had committed and took action against Empire Trust since his son had absconded. *Id.*

The Supreme Court found that even though Empire Trust had notice that the funds were drawn against the father's account, because of the certification of the check, the funds had also been drawn pursuant to unlimited authority provided by the power of attorney. Further, the Court stated that "[w]e do not perceive on what ground the petitioner [Empire Trust] could be held bound to assume that checks thus lawfully drawn were required to be held or used for one purpose rather than another." *Id.* at 479, 47 S.Ct. at 662.

Thus, the Supreme Court held that "[t]he certification [of the check] did not import a statement by the certifying bank that, besides the right of the son to draw, established by the power of attorney, the purposes for which the checks were drawn were lawful and were known by the bank." *Id.* at 480, 47 S.Ct. at 662. Consequently, the notice gained by Empire Trust from the form of the checks, i.e. the certification, was insufficient to charge the bank with knowledge of the son's misappropriation of the funds when he made withdrawals on his account at the bank. *Id.* at 479–80, 47 S.Ct. at 662. Therefore, we hold that, in the present case, the certification of a check does not impute to the certifying bank the giving of any notice to third parties that the purpose for which the check was drawn is lawful or known by the bank.

The United States Supreme Court also made it clear that where an unrestricted power of attorney is presented to a bank, the purpose of the power of attorney is to inform the bank of the relationship between the parties. *See id.* at 479, 47 S.Ct. at 662. Similarly, we hold that absent circumstances which might place a reason-

---

**6.** Specifically, the son was given the authority to draw checks on both accounts, with no qualifi-

cation concerning the purposes for which the checks could be drawn.

ably prudent bank on notice that its fiduciary duty to its account holder demands additional inquiry, it may rely on the terms of the power of attorney to discern the authority of the holder of such power demanding a withdrawal of funds. The bank in the instant case acted diligently when presented with the power of attorney executed by a competent adult by questioning the bank's attorney and the attorney who prepared the power of attorney to make certain the document was authentic and legal. At that point, the bank was not acting erroneously in disbursing with the funds as such disbursement was clearly within the terms of the power of attorney. We find no error in the bank's conduct since it has been established that generally when dealing with a broad power of attorney, there is no obligation on a third party to go behind the power. *See Crosby v. Loudoun Nat'l Bank,* 235 F.2d 540, 543 (4th Cir.1956); 14B Michie's Jurisprudence *Powers* § 4 (1988). Furthermore, when a competent adult grants a power of attorney to another, an agency relationship between the two is created,[7] and the principal and agent are ultimately responsible for the actions arising out of the power of attorney and not some third party who is without knowledge of any wrong doing. *See Empire Trust Co.,* 274 U.S. at 479, 47 S.Ct. at 662. *National Safe Deposit, Sav. and Trust Co. v. Hibbs,* 229 U.S. 391, 33 S.Ct. 818, 57 L.Ed. 1241 (1913).

■ The appellant also argues that since, in this particular case, Milner, Jr. requested to receive the funds he withdrew in the form of a cashier's check, the bank had a duty to issue that cashier's check in the name of Milner, Jr. as attorney in fact for Milner, Sr. and not in Milner, Jr.'s name alone. Again, we find the bank is under no such obligation. The reason the appellant contends the bank should have been required to make the certified check out as suggested is to place the world on notice that a fiduciary relationship existed between the Milner, Sr. and Milner, Jr. The problem with this argument is that under the power of attorney it is obvious that Milner, Jr. could have received the funds he did in a variety of ways, including an electronic transfer to another account or cash. If Milner, Jr. had made such a request, then the bank certainly could not have met this burden of giving notice of a fiduciary relationship. Moreover, as the Supreme Court held in *Empire Trust Co.,* the certification does not suggest that the bank had knowledge of the purposes for which the funds were drawn or that those purposes were legal. 274 U.S. at 480, 47 S.Ct. at 662. Likewise, the bank had no obligation to issue the certified check in any other manner than requested by the holder of the power of attorney.

Based on the foregoing opinion, the decision of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.

McHUGH, Justice, dissenting:

I dissent from the majority opinion because I believe that the jury was given proper instructions to decide the issue of the bank's liability based upon the evidence presented at trial.

In syllabus point 2, the majority opinion states: "Absent circumstances which might place a reasonably prudent bank on notice that its fiduciary duty to its account-holder demands additional inquiry, the bank may rely on the terms of the power of attorney to discern the authority of the holder of such power demanding a withdrawal of funds."

This principle is sound. However, in this case, the evidence presented at trial raised questions related to this very issue, that is, whether such circumstances were absent or not. The jury decided that such circumstances were not absent in this case, and the trial court erred in setting this determination aside.

The evidence at trial clearly indicated that the account in question had a balance of $19,695.00 when Garfield Milner, Jr.

---

7. In *Kanawha Valley Bank v. Friend,* 162 W.Va. 925, 253 S.E.2d 528 (1979) we held that "[a] power of attorney creates an agency and this establishes the fiduciary relationship which exists between a principal and agent." 162 W.Va. at 928, 253 S.E.2d at 530.

withdrew $19,600.00, thus, leaving a balance of only $95.00. Despite numerous deposits during the course of several years, this single withdrawal had the practical effect of depleting the account.

Although the bank did inquire into the *validity* of the power of attorney in this case, there is nothing in the record to indicate that the bank inquired into the *circumstances* of that with which it was faced, specifically, an attempt by one acting under the authority of a power of attorney to essentially remove all of the funds from a well established account. The majority opinion acknowledges that the bank did not direct any inquiries to Garfield Milner, Jr. as to why he desired to withdraw almost all of this substantial amount of money and designate himself, without any qualifications, as payee on the cashier's check.

Moreover, as the majority opinion also acknowledges, the bank made no attempt to contact Gary Milner, the other joint owner of the bank account, and only a minor attempt to contact Garfield Milner, Sr.

In *Renzi v. Aleszczyk*, 44 A.D.2d 648, 352 N.Y.S.2d 736 (1974), a New York appeals court addressed issues relating to a bank's duty to exercise due care in transferring funds out of accounts where the attempt to transfer such funds was under the authority of two powers of attorney.* There, the court held: "Where some *fact* or *circumstance* ought to 'have excited the suspicion and inquiry of a[n] ordinarily careful person', the bank has a duty to inquire into the *circumstances* before it pays out the funds[.]" 44 A.D.2d at 649, 352 N.Y.S.2d at 738 (emphasis supplied). *See also Novak v. Greater New York Savings Bank*, 30 N.Y.2d 136, 141–42, 282 N.E.2d 285, 287–88, 331 N.Y.S.2d 377, 381 (1972).

In this case, the bank merely inquired into the validity of the power of attorney, and authority arising therefrom. Under the eyebrow-raising circumstances of this case, the bank did not pursue an inquiry into these circumstances or the specific facts involved.

The majority opinion relies heavily upon a decision of the United States Supreme Court, namely, *Empire Trust Co. v. Cahan*, 274 U.S. 473, 47 S.Ct. 661, 71 L.Ed. 1158 (1927). While the result reached in *Empire Trust* is the same as that reached in the case now before us, the majority opinion in this case focuses on the unrestricted nature of the power of attorney, thus comparing it to the one at issue in *Empire Trust*. The majority opinion fails to recognize and note the additional grounds expressed by the Supreme Court for its decision in *Empire Trust*: "For in addition to what we have said, the [withdrawal] transactions went on for over two years and the petitioner [bank] fairly might expect the respondent [grantor] to find it out in a month or two if anything was wrong." 274 U.S. at 479–80, 47 S.Ct. at 662, 71 L.Ed. at 1161.

In this case, there was only one critical transaction: the withdrawal of $19,600.00. This critical transaction did not extend over a period of time whereby any of the other interested parties would have had the opportunity to learn of the account's depletion.

The majority opinion also has no problem with the fact that the withdrawal request was satisfied by the bank with a cashier's check made payable to Garfield Milner, Jr., in his individual capacity and not as attorney in fact for Garfield Milner, Sr. Citing no authority and, therefore, presumably relying upon none, the majority opinion asserts that the bank is under no obligation to issue a check in the name of Garfield Milner, Jr., as attorney in fact for Garfield Milner, Sr.

By issuing the check to Garfield Milner, Jr. in his individual capacity, this made it simpler to subsequently deposit the funds in an out-of-state bank in his own account, and, ultimately, to convert the funds to his personal use. In a similar context, it has been stated:

---

* In *Renzi*, the powers of attorney that were at issue were executed not with a signature, but merely with an "X." Similarly, in this case, the signature on the power of attorney granting authority to Garfield Milner, Jr. is hardly discernable.

The mere fact that an agent or fiduciary deposits in his individual account paper drawn by him in his fiduciary capacity is not *generally* considered to be sufficient to charge the bank with notice of his intended misappropriation of the funds; this fact, *when coupled with additional circumstances,* may be sufficient to charge the bank with notice of an intended misappropriation, but without additional circumstances it will not constitute such notice.

10 Am.Jur.2d *Banks* § 525, at 499 (1963) (emphasis supplied).

It is undisputed that Garfield Milner, Jr. was acting as attorney in fact for his father when he requested the withdrawal of $19,600.00, as this was acknowledged by the bank when it inquired into his authority to do so. Consequently, a fiduciary relationship existed between Garfield Milner, Jr. and his father. "A power of attorney creates an agency and this establishes the *fiduciary relationship* which exists between a principal and agent." *Kanawha Valley Bank v. Friend,* 162 W.Va. 925, 928, 253 S.E.2d 528, 530 (1979) (emphasis supplied).

The question as to what constitutes notice to a bank of an intended misappropriation by a fiduciary of trust funds is one that *depends upon the particular facts and circumstances* attending the case at hand. Whether the bank had notice or was put on inquiry is a *question of fact, not one of law.*

10 Am.Jur.2d *Banks* § 525, at 498–99 (1963) (emphasis supplied) (footnote omitted).

Certainly, all of the circumstances in this case gave rise to a question of fact regarding the bank's liability. The jury was properly instructed on this factual question and its determination with respect to this question should have been left undisturbed.

Although the trial court set aside the verdict against the bank, in reality, the trial court had responded favorably to the bank's motion for a directed verdict, which motion was made at the close of the plaintiff's case-in-chief. Majority op. at 518, n. 2.

Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence.

Syl., *Nichols v. Raleigh–Wyoming Coal Co.,* 112 W.Va. 85, 163 S.E. 767 (1932).

Accordingly, based upon all of the circumstances in this case, the verdict should not have been set aside.

I am authorized to state that Justice MILLER joins me in this dissenting opinion.